DUKE POWER COMPANY, Petitioner v. WORTH WINEBARGER and wife, REBECCA WINEBARGER, Respondents

No. 88

(Filed 6 May 1980)

1. **Eminent Domain § 6.2— value of land similar to condemned land—admissibility**

    Where the value of a particular parcel of realty is directly in issue, the price paid at voluntary sales of land similar in nature, location, and condition to the land involved in the suit is admissible as independent evidence of the value of the land in question if the sales are not too remote in time. Whether two properties are sufficiently similar to admit the sales price of one as circumstantial evidence of the value of the other is a question to be determined by the trial judge, usually upon voir dire.

2. **Eminent Domain § 6.2— value of dissimilar land—inadmissibility**

    Where a particular property is markedly dissimilar to the property in issue, the sales price of the former may not be alluded to in any manner which suggests to the jury that it has a bearing on the estimation of the value of the latter.

3. **Eminent Domain § 6.9— value witness—cross-examination as to knowledge of values and sales prices of dissimilar properties**

    Where a witness has been offered to testify to the value of the property directly in issue, the scope of that witness's knowledge of the values and sales prices of dissimilar properties in the area may be cross-examined for the limited purpose of impeachment to test his credibility and expertise. However, it is improper for the cross-examiner to refer to specific values or prices of noncomparable properties in his questions to the witness, and if the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied

and the inquiry as to that property is exhausted. If the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues, and in such a rare case the cross-examiner must be prepared to take the witness's answer as given.

4. **Eminent Domain § 6.9— cross-examination of value witness—references to values and sales prices of dissimilar properties—errors not cured by limiting instruction**

   In this action to condemn a power line easement, the trial court erred in failing to rule promptly on respondents' continued objections to persistent references by petitioner's counsel during cross-examination of respondents' value witnesses to values and sales prices of properties not comparable to respondents' land and in ultimately overruling those objections; furthermore, such errors were not cured by the court's occasional instructions to the jury to consider the witnesses' testimony relating to the sales prices of other properties only insofar as it bore upon the witnesses' knowledge of values where (1) no curative instruction was given as to the cross-examination of one value witness, (2) the curative instructions given by the court were not sufficient to disabuse the jury of the impressions inevitably made by the repeated price and value references posed in questions by petitioner's counsel, and (3) petitioner's counsel persisted in the improper mode of cross-examination to such an extent that it pervaded the whole trial.

5. **Appeal and Error § 24; Rules of Civil Procedure § 46; Trial § 15.2— objection to line of questioning—insufficiency of general objection**

   A general objection will not suffice to afford counsel the benefits of the rule which preserves the continued effect of a specific objection, once made, to a particular line of questioning, G.S. 1A-1, Rule 46(a)(1); rather, objecting counsel must alert the trial judge to the specific legal infirmities which may inhere in a "specified line of questioning."

6. **Appeal and Error § 24; Rules of Civil Procedure § 46; Trial § 15.2— objection to line of questioning—line objected to apparent to court and parties**

   The requirement in Rule 46(a)(1) that counsel object to a "specified" line of questioning is satisfied where the "line" of questioning objected to is apparent to the court and the parties.

7. **Appeal and Error § 24; Eminent Domain § 6.9; Rules of Civil Procedure § 46; Trial § 15.2— objections to line of questions—failure to object to questions—no waiver of objection**

   Pursuant to G.S. 1A-1, Rule 46(a)(1) and Appellate Rule 10(b)(1), respondents' failure to object to two questions posed on cross-examination of their value witness concerning the sales prices of noncomparable lands did not constitute a waiver of respondents' objections to those questions or to similar questions posed to other value witnesses where respondents' counsel objected some fourteen times to questions by petitioner's attorney which disclosed or sought to elicit sales price figures on noncomparable properties; several bench

conferences occurred at which the trial judge was made fully aware of the specific grounds of respondents' objections; the two questions not objected to were the same as those earlier allowed over strenuous objections during the cross-examination of two other witnesses; and it was clear that later objections to the same line of questioning would be of no avail.

APPEAL pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals which found no error in a trial conducted by *Judge Albright* at the 1 May 1978 Session of WILKES Superior Court in which respondents were awarded damages in petitioner's condemnation action. The opinion of the Court of Appeals (by *Chief Judge Morris,* concurred in by *Judge Webb* with *Judge Hedrick* dissenting) is reported at 42 N.C. App. 330, 256 S.E. 2d 723 (1979). This case was docketed and argued as No. 84, Fall Term 1979.

*McElwee, Hall, McElwee & Cannon, by Wm. H. McElwee III, William C. Warden, Jr., Wm. I. Ward, Jr., Chief Trial Counsel, Attorneys for plaintiff appellees.*

*Franklin Smith, Attorney for defendant appellants.*

EXUM, Justice.

Respondents Worth and Rebecca Winebarger appeal from a judgment on a verdict assessing damages of $16,000 to compensate them for petitioner's taking of an electric power line easement and right-of-way over their land. Error is assigned to certain evidentiary rulings and instructions thereon by the trial judge during trial. For errors committed in these rulings on questions propounded on cross-examination of respondents' expert witnesses, we reverse the Court of Appeals and grant respondents a new trial.

The gist of this appeal lies in respondents' disagreement with the adequacy of the jury's verdict. Respondents vigorously contend that the jury was prejudiced by improper references made by petitioner's counsel to values and sales prices of properties not comparable to respondents' land. Under the circumstances of this case, we agree.

During cross-examination of respondents' value witnesses, petitioner's counsel continually and persistently alluded to alleged sales prices of parcels of land other than that involved in the

case. For instance, respondents' witness Fred Norman was asked on cross-examination:

"Q. Let me ask you this, do you know anything of a 225.4 acre sale made by Johnson J. Hayes, Jr., to John and Joy Payne in November, 1976?

A. No. As I stated I did not base any appraisal on any comparable.

Q. You don't know that property sold for $148.00 an acre, do you?

A. No, sir.

Mr. Smith objects. Overruled.

EXCEPTION NO. 4.

Q. You don't know that sold for $148.00 an acre?

A. No, I do not.

Q. How about the Douglas Ferguson sale of property from Coyd Kilby?

Mr. Moore objects.

Q. You don't know that it sold for $114.00 an acre?

Mr. Smith objects.

BY THE COURT: Show the jury to the jury room.

[Jury retires]

BY MR. MOORE: If he is going to cross-examine the witness to specific property, he has to show that that property is comparable to the property which they are talking about.

BY MR. MCELWEE: It is not presented for purpose of comparable sales, just testing his knowledge.

BY THE COURT: As I understand the rule on cross-examination, he is entitled to test, to question him to test his knowledge and familiarity for the purpose of impeachment."

Similarly, the following questions were propounded on cross-examination to respondents' witness Paul Osborne with respect to property previously owned by Osborne:

"Q. You paid $60.00 an acre for the property, did you not?

Mr. Moore objects.

A. We swapped land.

BY MR. MCELWEE: We present this for the purpose of qualification.

A. I didn't buy it directly.
Mr. Moore objects.
    EXCEPTION NO. 8
A. I didn't buy the land from him, we swapped land.
Q. The price was $60.00 an acre?
Mr. Moore objects.
    EXCEPTION NO. 9

A. No, I wouldn't say it was $60.00 an acre.
BY MR. MOORE: He said he swapped. Objection.

    .  .  .  .

A. Shortly after I traded the property in Boomer, I sold it. . . .
Q. Can you tell us how much you sold it for?
Mr. Smith objects. Overruled.
    EXCEPTION NO. 11
A. $150.00 an acre. I testified previously that I keep up with land sales, and I am not familiar with the sale of property by Mary Gwyn Hubbard to Caney Lowe and Sid Mullis, 44.1 acre tract of land for $500.00 per acre in Boomer Township. No, I'm not familiar with it.
Q. I will ask you if you are familiar with the sale of 202.4 acres of property by Johnson J. Hayes, Jr.—
BY MR. MOORE: Objection.
    EXCEPTION NO. 12
Q. To John and Joy Payne for the price of $148.00 per acre in Boomer Township?
Mr. Moore Objects. Overruled.
    EXCEPTION NO. 13

    .  .  .  .

Q. I asked you if you are familiar with the sale from Lloyd Kilby to Douglas L. Ferguson that would for 175 acres of land, twenty-five acres being pasture and 150 woodland at $114.00 per acre in Boomer Township?
Mr. Moore objects. Overruled.
    EXCEPTION NO. 14"

Finally, respondents' witness Cecil Kilby was cross-examined by petitioner's counsel as follows:

"Q. I'll ask you if that 202.4 acres was not purchased by you and Mr. Church for $37,500.00?
Mr. Moore objects.
A. I believe it was purchased by me.
BY THE COURT: Just a minute, let me talk to you up here at the bench.

Whereupon the counsel approaches the bench for conference with the Court.

BY THE COURT: I am going to overrule the objection.
EXCEPTION NO. 18

.  .  .  .

Q. I ask if you are not familiar with the sale of property from J. J. Hayes, Jr., to John and Joy Payne, 202.4 acres in 1976 for $148.00 an acre?
A. No, I don't think that I know where that piece of property is, it's another one that you climb to.

Q. Are you familiar with the sale?
A. No, sir.

Q. Nor are you familiar with the sale of property from Mr. Lloyd Kilby to Douglas Ferguson, 175 acres for $114.00 an acre?
A. No, I don't know that one."

There was no showing that any of the properties referred to in the questions above were in any way comparable to respondents' property. There was thus no foundation for the use of statements of their values or sales prices as competent circumstantial evidence of the value of respondents' land. *See generally* 1 Stansbury's North Carolina Evidence § 100 (Brandis rev. 1973). Petitioner contends nevertheless that the questions were entirely proper on cross-examination for the purposes of impeaching the witnesses and probing their knowledge of land values in the area. Apparently agreeing with petitioner on this point, the judge overruled or ignored respondents' repeated objections to this line of questioning. Instead he instructed the jury not to consider the testimony as substantive evidence for the purpose of evaluating respondents' property. This resulted in error prejudicial to respondents.

A witness who expresses an opinion on property value may be cross-examined with respect to his *knowledge* of values of nearby properties for the limited purpose of testing the worthiness of his opinion, or challenging his credibility, even if those properties are not similar to that involved in the litigation. *Templeton v. Highway Commission,* 254 N.C. 337, 118 S.E. 2d 918 (1961); *Barnes v. Highway Commission,* 250 N.C. 378, 109 S.E. 2d 219 (1959). It is always the duty of the presiding judge, however, to confine the nature and scope of this line of cross-examination to matters relevant to its limited impeachment purpose. That which is revealed to the jury in either the examiner's questions or the witness' answers should not exceed the bounds of such relevancy. This principle is well illustrated in a number of our cases.

In *Highway Commission v. Privett,* 246 N.C. 501, 99 S.E. 2d 61 (1957), the witness was asked on cross-examination whether he knew of the values and sales prices of other property in the area. The witness answered in the negative, and the cross-examination ended at that point. Speaking for this Court, Justice (later Chief Justice) Bobbitt found no impropriety in the questions propounded:

> "The testimony so elicited was relevant solely to the credibility of the witness, and the weight, if any, to be given his testimony. Let it be noted that none of the questions undertook to elicit testimony as to the valuations or sales prices of other properties, the questions being directed to whether the witness *had opinions or knowledge* with reference thereto." 246 N.C. at 506-507, 99 S.E. 2d at 65. (Emphasis original.)

In *Barnes v. Highway Commission, supra,* the condemnor's appraisal witness was asked by petitioner's counsel on cross-examination: "Now, Mr. Minish, you yourself appraised approximately 13 acres of property directly east of this [subject] property and abutting on this property for $300,000.00, didn't you?" An objection to this question was sustained. This Court found no error, noting that:

> "[b]ecause of the dissimilarity of the tracts, testimony adduced thereby was incompetent on the question of value. The total appraisal value placed on the land by the witness would

not of itself have impeached the witness or shown lack of knowledge of values in the vicinity. . . . *The conclusion is inevitable that petitioner desired only to get the $300,000.00 figure before the jury to induce thereby a liberal award.* This within itself would violate the applicable rule of evidence. . . ." 250 N.C. at 396, 109 S.E. 2d at 233. (Emphasis supplied.)

More recently, in *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972), a condemnation action instituted by the state to acquire an undeveloped portion of an island for historic preservation purposes, this Court said:

"Similarly prejudicial was the evidence that lots, fronting 200 feet on the ocean and extending back 100 feet *in the developed portion* of Shell Island, were selling for $75.00 per front foot or $15,000.00 a lot. Respondents elicited this testimony during the cross-examination of the State's expert witness Cantwell, who had testified on direct examination to his opinion of the fair market value of the land taken. It was competent for respondents to question Cantwell's knowledge of the value of coastal lands in that area and, in response to such questions, he had said that he himself had appraised Shell Island and knew at what price lots thereon had been sold and the price at which the remaining lots were listed for sale. *This information satisfied the only legitimate purpose the question could have had.* . . . Respondents' purpose in eliciting the figures $75.00 and $15,000.00 before the jury could only have been 'to induce thereby a liberal award. . . .'" 282 N.C. at 20, 191 S.E. 2d at 654, *quoting from Barnes v. Highway Commission, supra.* (Emphasis supplied.)

These cases support the principle that, while a witness' *knowledge,* or lack of it, of the values and sales prices of certain noncomparable properties in the area may be relevant to his credibility, the specific dollar amount of those values and prices will rarely if ever be so relevant. The impeachment purpose of the cross-examination is satisfied when the witness responds to a question probing the scope of his knowledge. Any further inquiry which states or seeks to elicit the specific values of property dissimilar to the parcel subject to the suit is at best mere surplusage. At worst it represents an attempt by the cross-examiner to convey to the jury information which should be ex-

cluded from their consideration. When wilful and persistent, such an attempt undercuts the applicable rule of evidence and tends to confuse the jury. It was undoubtedly for these reasons that the rule was explained by Justice (later Chief Justice) Sharp in *Carver v. Lykes*, 262 N.C. 345, 356-57, 137 S.E. 2d 139, 148 (1964), as follows:

> "The 'utmost freedom of cross-examination' to test a witness' knowledge of values . . . does not mean that counsel may ask a witness if he doesn't know that a certain individual sold his property for a stated sum with no proof of the actual sales price other than the implication in his question. . . . Where such information is material it is easy enough to establish by the witness himself, whether a certain property has been sold to his knowledge and, if so, whether he knows the price. If he says he does not know, his lack of knowledge is thus established by his own testimony and doubt is cast on the value of his opinion. . . . If he asserts his knowledge of the sale and, in response to the cross-examiner's question, states a totally erroneous sales price, is the adverse party bound by the answer or may he call witnesses to establish the true purchase price? Unless per chance the purchase price of the particular property was competent as substantive evidence of the value of the property involved in the action, it would seem that the party asking the question should be bound by the answer. To hold otherwise would open a Pandora's box of collateral issues." (Citations omitted.)

For clarity we here restate the following controlling principles:

[1]  (1) Where the value of a particular parcel of realty is directly in issue, the price paid at voluntary sales of land similar in nature, location, and condition to the land involved in the suit is admissible as independent evidence of the value of the land in question, if the sales are not too remote in time. Whether two properties are sufficiently similar to admit the sales price of one as circumstantial evidence of the value of the other is a question to be determined by the trial judge, usually upon *voir dire. State v. Johnson, supra; Redevelopment Commission v. Panel Co.*, 273 N.C. 368, 159 S.E. 2d 861 (1968).

[2]   (2) Conversely, where a particular property is markedly dissimilar to the property at issue, the sales price of the former may not be introduced or alluded to in any manner which suggests to the jury that it has a bearing on the estimation of the value of the latter.

[3]   (3) Where a witness has been offered to testify to the value of the property directly in issue, the scope of that witness' *knowledge* of the values and sales prices of dissimilar properties in the area may be cross-examined for the limited purposes of impeachment to test his credibility and expertise. *Templeton v. Highway Commission, supra.*

(4) Under these limited impeachment circumstances, however, it is improper for the cross-examiner to refer to specific values or prices of noncomparable properties in his questions to the witness. *Carver v. Lykes, supra.* Moreover, if the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted. *Highway Commission v. Privett, supra.* If, on the other hand, the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues. In such a rare case, however, the cross-examiner must be prepared to take the witness' answer as given. *Carver v. Lykes, supra.*

[4]   Applying these principles to the instant case, we believe the cross-examination tactics employed by petitioner's counsel to "test the knowledge" of respondents' value witnesses violated the rule set forth in *Carver v. Lykes, supra.* The trial court erred in failing to respond promptly to respondents' continued objections to this line of questioning, and in ultimately overruling the objections. Furthermore, under the circumstances of this case, we do not believe these errors were rendered harmless by the court's occasional instructions to the jury to consider the witnesses' testimony "relating to the sales prices of other properties" only insofar as it bore upon the witnesses' knowledge of values.

Whether an instruction to disregard or give limited consideration to evidence cures an error potential in its admission must always depend upon the nature of the evidence admitted and the circumstances of the case. *See, e.g., State v. Aycoth,* 270 N.C. 270, 154 S.E. 2d 59 (1967). "[I]f the evidence admitted is obviously prejudicial, and especially if it is emphasized by repetition or by allowing it to remain before the jury for an undue length of time, it may be too late to cure the error by withdrawal" or cautionary instructions. 1 Stansbury's North Carolina Evidence § 28, pp 75-76 (Brandis rev. 1973). Here the record indicates that no curative instruction was given as to the cross-examination of respondents' witness Fred Norman. Second, although curative instructions were given as to the cross-examination testimony of the witnesses Paul Osborne and Cecil Kilby, we do not think they were sufficient to disabuse the jury of the impressions inevitably made by the repeated price and the value references posed in the questions asked by petitioner's counsel. Third, petitioner's counsel persisted in the improper mode of cross-examination to such an extent that it, fairly considered, pervaded the whole trial. The low figures revealed by the questions propounded on cross-examination by petitioner's counsel could only have served to prejudice respondents' case with respect to the value of their own land, the sole question at issue. Under these circumstances, we will not indulge in the usual presumption that the jury followed the letter and intent of the judge's instructions. *See State v. Ray,* 212 N.C. 725, 729, 194 S.E. 482, 484 (1938).

Although the Court of Appeals agreed that the questions propounded on cross-examination to the witness Fred Norman concerning Norman's knowledge of the Hayes sale ("for $148.00 an acre") and the Kilby sale ("for $114.00 an acre") were improperly phrased, it nevertheless concluded that respondents waived their objections to these questions by failing to object to the same questions posed to the witness Cecil Kilby. We do not agree.

[5] General Statute 1A-1, Rule 46(a)(1) provides that "when there is an objection to the admission of evidence involving a specified line of questioning, it shall be deemed that a like objection has been taken to any subsequent admission of evidence involving the same line of questioning." This Court has noted before that "the rationale behind this rule is persuasive." *State v. Hunter,* 290 N.C. 556, 572, 227 S.E. 2d 535, 545 (1976), *cert. denied,* 429 U.S.

1093 (1977). The rule does not modify the general principle that the benefit of an objection, seasonably made, is lost if thereafter substantially the same evidence is admitted without *any* objection, *see Shelton v. R.R.*, 193 N.C. 670, 139 S.E. 232 (1927). It does operate to preserve the continued effect of a specific objection, once made, to a particular line of questioning. It eliminates, therefore, the burdens and tactical disadvantages which would otherwise result to objecting counsel from the necessity for repeated statements of essentially the same objection. *See generally* 1 Stansbury's North Carolina Evidence § 30, p 81 (Brandis rev. 1973). A general objection, however, will not suffice to afford counsel the benefits of the rule. *State v. Hunter, supra.* Rather, objecting counsel must alert the trial judge to the specific legal infirmities which may inhere in a *"specified* line of questioning." If at that point counsel's objection is overruled, he is entitled to assume the court will continue to make the same ruling in response to subsequent objections to the same line of questioning.

[6] Although in this case it would have been the better practice for counsel to have precisely defined the "line" of cross-examination to which he was objecting, to hold that the trial judge was not in fact cognizant of respondents' opposition to a specified line of questioning would truly exalt form over substance. Though not literally complied with in this case, the requirement in Rule 46(a)(1) that counsel object to a "specified" line of questioning is obviously satisfied where, as here, the "line" of questioning objected to is apparent to the court and the parties. *Cf. Anderson v. Butler*, 284 N.C. 723, 729, 202 S.E. 2d 585, 588 (1974), holding mandatory the provision in Rule 50(a) that a motion for directed verdict shall state the *specific* grounds therefor, but noting that "the courts need not inflexibly enforce the rule when the grounds for the motion are apparent to the court and the parties." *See also Hodges v. Hodges*, 37 N.C. App. 459, 246 S.E. 2d 812 (1978).

Respondents' counsel objected some fourteen times to questions by petitioner's attorney which disclosed or sought to elicit sales price figures on noncomparable properties. Several bench conferences occurred at which the trial judge was made fully aware of the specific grounds of respondents' objections. The two questions posed to the witness Kilby without objection were the

very same as those earlier allowed over strenuous objections during the cross-examinations of Norman and Osborne. These previous objections had been twice overruled by the court after a discussion with counsel of the applicable law. It was thus abundantly clear that later objections to the same line of questioning would be of no avail.

[7] Under these circumstances we hold that respondents' choosing not to make obviously fruitless objections during the Kilby cross-examination did not waive their right to complain on appeal of this or the earlier errors of the same sort. The reason for no waiver does not rest entirely on the provisions of G.S. 1A-1, Rule 46(a)(1). Whether an objection has been duly preserved for purposes of appeal is a question of appellate procedure over which this Court, not the legislature, has final authority. "The Supreme Court shall have exclusive authority to make rules of procedure and practice for the Appellate Division. The General Assembly may make rules of procedure and practice for the Superior Court and District Court Divisions, and the General Assembly may delegate this authority to the Supreme Court." N.C. Constitution, Art. IV, § 13(2). Our appellate rules provide: "Any exception which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal *by objection noted or which by rule or law was deemed preserved or taken without any such action,* may be set out in the record on appeal and made the basis of an assignment of error." App. R. 10(b)(1). (Emphasis supplied.) It is thus Appellate Rule 10 in conjunction with Civil Procedure Rule 46 which enables respondents to take advantage of this assignment of error.

Similar considerations apply to respondents' objections to petitioner's questioning of the witness Paul Osborne concerning the specific value of property ("$60.00 an acre") previously acquired by Osborne. Here again, respondents contend that the trial court's failure to rule promptly on their continued objections to statements of price and value in petitioner's questions resulted in prejudice which was not cured by subsequent limiting instructions. The Court of Appeals agreed that the questioning was improper under the rule of *Carver v. Lykes, supra,* but held in effect that respondents failed to urge this rule as the specific ground for their objections. This conclusion is not supported by the record, wherein the following colloquy appears:

BY THE COURT: [Outside of the presence of the jury]: I want to hear some more circumstances of this transaction before I rule on it, I am going to ask the witness.

BY THE COURT: You said this was a swap of property, was it?

BY THE WITNESS: Yes . . . we swapped 300 acres for 525, and I did pay him some difference, but I have forgotten what it was.

.    .    .    .

BY THE COURT: I am not sure this comes within the rule of *State Highway v. Templeton* case, and I am going to sustain the objection."

His Honor's reference at this point to the *Templeton* case (*Templeton v. Highway Commission, supra*) demonstrates that he considered respondents' objections in the context of appropriate, applicable law, *i.e.*, with reference to the extent to which a witness may be cross-examined to test his knowledge of property values. Although respondents' objections were ultimately sustained, we believe the ruling came too late to avoid the prejudice occasioned by petitioner's repeated references to incompetent price figures. Under the particular circumstances of this case, the failure to rule promptly on respondents' meritorious objections and to limit the scope of cross-examination constituted reversible error.

Respondents' remaining assignments of error have been correctly addressed by the Court of Appeals and we need not repeat them here. For prejudicial error occurring in petitioner's cross-examination of respondents' witnesses, however, respondents must be afforded a new trial on the issue of damages. Accordingly, the decision of the Court of Appeals is reversed and the case is remanded to the Court of Appeals for further remand to Wilkes Superior Court for a new trial to be conducted under principles herein discussed.

Reversed.

Error and remanded.