DEPARTMENT OF TRANSPORTATION v. JAMES WAVERLY BURNHAM, SR.
AND WIFE, EDITH LOUISE WHITE BURNHAM

No. 821SC492

(Filed 19 April 1983)

1. **Eminent Domain § 6.2— appraisal witness—sales price of nearby tract of land**

    In a highway condemnation action, the trial court erred in permitting defendant landowners' appraisal witness to state on cross-examination the price for which a nearby tract of land sold in 1973 after the witness had twice testified that he did not know the sales price of the nearby tract since (1) the impeachment purpose of the cross-examination was satisfied when the witness twice responded that he did not know what the nearby tract sold for in 1973, and the record failed to show that the trial judge determined in his discretion that the impeachment value of such cross-examination outweighed the possibility of confusing the jury with collateral issues, and (2) the record did not show that the two tracts were comparable so as to make the witness's answer admissible as substantive evidence.

2. **Eminent Domain § 6.2— sales prices of other land—similarities to condemned land—no necessity for voir dire**

    The trial court in a highway condemnation action did not abuse its discretion in determining without a voir dire hearing that three tracts of land were sufficiently similar to the condemned land to render the sales prices of those tracts admissible as evidence of the value of the condemned land.

3. **Eminent Domain § 5.6— highway condemnation—fair market value—instructions on expenses of subdividing**

    The evidence in a highway condemnation action supported the trial court's instruction that "[t]he fair market value is not the aggregate of the prices of lots into which the tract could best be divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and sale of the same, and holding it and paying taxes and interest until all lots are disposed of cannot be ignored and it is too uncertain and conjectural to be computed."

APPEAL by defendants from *Brown, Judge.* Judgment entered 11 February 1982 in Superior Court, CAMDEN County. Heard in the Court of Appeals on 17 March 1983.

This is a condemnation proceeding for state highway purposes. On 3 December 1979 plaintiff took 7.381 acres out of a 50.819-acre tract owned by defendants.

The tract is located on U.S. Highway #17 on the outskirts of the village of South Mills, approximately 14 miles from Elizabeth City. The plaintiff took a strip of land fronting 500.91 feet out of

.7 mile of frontage on the east side of the highway. Running parallel to the opposite side of the highway is the Dismal Swamp canal, which accommodates interstate water traffic. The land was devoted to agricultural purposes before the taking. Defendants' well-preserved dwelling house on the highway is of historical interest. The house has been Mr. Burnham's residence for 73 years.

Within the tract taken, the plaintiff has constructed two sixty-five foot high bridges carrying two lanes of traffic in each direction. Two witnesses characterized the impact from the effect of the bridge on the original tract as unprecedented. In flat and level Camden County, the finished bridge project was described as "a mountain."

Defendants' evidence on highest and best use was for a real estate subdivision, a strip development along the highway. Damages testimony of defendants' witnesses ranged from $71,600 to $80,000. Plaintiffs' witnesses, who gave opinions that the highest and best use was agricultural purposes, gave damages testimony from $27,800 to $29,200.

Defendants appeal from the jury verdict of $37,000 on the issue of just compensation.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General Claude W. Harris, Assistant Attorneys General Robert G. Webb, Charles M. Hensey and Blackwell M. Brogden, Jr., for plaintiff appellee.*

*LeRoy, Wells, Shaw, Hornthal & Riley by Dewey W. Wells for defendant appellants.*

BRASWELL, Judge.

The assignments of error consist of three questions which are concerned with evidence on cross-examination, "comparable" tracts of land, and jury instructions.

[1] Robert Ripley, an expert land appraiser for the Burnhams, the defendant-landowners, twice testified that he did not know the sales price of another tract, Camden Woods. During cross-examination when the same question was put a third time, defendants' objection was overruled, and counsel's request to "be heard" was denied. Ripley answered, "$115,000." The reception of this answer was error for which we reverse and order a new trial.

The evidence shows that on direct examination Ripley stated he was familiar with the nearby Camden Woods property and that he used it only in considering the highest and best use of the Burnham property. As to the Burnhams' land, Ripley said, "[t]he highest and best use was for the sale of individual homesites facing [Highway] 17 and one acre of other tract, depending upon what the purchaser wanted." Ripley's opinion of fair market value before the taking was $325,192, with an after-value of $248,582, for a difference of $76,610. As to Camden Woods, which contained 123.6 acres as compared to Burnhams' 50.819 acres, Ripley knew that it had been sold in 1973 for a residential subdivision. Prior to the 1973 sale, Camden Woods land was used for agricultural purposes, as was Burnham's land immediately before the 1979 taking. Camden Woods is located approximately one quarter to one half mile north of the Burnham land, on the same highway.

An extensive *voir dire* was held during the direct examination of Ripley concerning his testimony about Camden Woods. Mr. Ripley said that he considered the Camden Woods tract in arriving at his opinion of highest and best use of the Burnham tract, that he knew the Camden Woods tract had been divided into lots on U.S 17 and on a secondary road, that he determined some of the lots had been sold and that houses had been built in the $50,000-$85,000 range, and that he considered all that information in arriving at his appraisal of the Burnham tract. Ripley also stated that he did not use the Camden Woods tract in determining the fair market value of the Burnham land.

On *voir dire* cross-examination by plaintiffs' counsel of Ripley, the following occurred:

　　"Q. Mr. Ripley, did you determine *what the tract of land sold for* when it was in its original state prior to the time it was developed as Camden Woods?

　　A. No, sir." (Emphasis added.)

On subsequent cross-examination of Ripley before the jury several appropriate and proper questions regarding Camden Woods were asked. Then, the following occurred:

　　"Q. Now, the Camden Wood property you said was sold in 1973, as an undivided tract for residential subdivision?

A. I don't know *what it was sold for.*

Q. It was sold as an undivided tract, and subsequently it was developed sir?

A. Yes, sir.

Q. Do you know *what it sold for* in 1973?

OBJECTION. OVERRULED.

BY MR. WELLS:

May I be heard, your Honor?

BY THE COURT:

No, sir.

A. $115,000.00." (Emphasis added.)

On direct examination after the *voir dire,* Mr. Ripley was questioned whether in his opinion Camden Woods was comparable to the Burnham tract prior to the subdivision of Camden Woods. His answer was: "The property along 17, that tract of land, similar to the property that Mr. Burnham has along 17, is comparable or near comparable to Mr. Burnham's property in its original state." No sales price for Camden Woods was offered or attempted to be offered by the Burnhams.

Defendants now contend that the sales price of Camden Woods is too remote in time, that there is no showing of firsthand knowledge in Ripley of sales price, and that there was no *voir dire* to determine admissibility or discretion for allowing the evidence on cross-examination, and that it is not comparable as a measure of value.

It is the law in condemnation proceedings that "[a] witness who expresses an opinion on property value may be cross-examined with respect to his *knowledge* of values of nearby properties for the limited purpose of testing the worthiness of his opinion, or challenging his credibility, even if those properties are not similar to that involved in the litigation." *Power Co. v. Winebarger,* 300 N.C. 57, 63, 265 S.E. 2d 227, 231 (1980). This principle was discussed by the court as follows: "While a witness' *knowledge,* or lack of it, of the values and sales prices of certain noncomparable properties in the area may be relevant to his

credibility, the specific dollar amount of those values and prices will rarely if ever be so relevant. The impeachment purpose of the cross-examination is satisfied when the witness responds to a question probing the scope of his knowledge." *Id.* at 64-65, 265 S.E. 2d at 231-32. *Winebarger* listed as one of the controlling principles in condemnation proceedings that:

> "[I]f the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted. [Citation omitted] If, on the other hand, the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues."

*Id.* at 66, 265 S.E. 2d at 232-33.

Another principle of law spelled out in *Winebarger, id.* at 65, 265 S.E. 2d at 232, is that, "Whether two properties are sufficiently similar to admit the sales price of one as circumstantial evidence of the value of the other is a question to be determined by the trial judge, usually upon *voir dire.*" In the case before us, although an extensive *voir dire* was held earlier, there was nothing within it to eliminate the need for another *voir dire* on the sales price of Camden Woods when Burnham's counsel objected and asked to be heard. The whole record does not show that the two tracts, Camden Woods and Burnhams', are comparable, so as to make the answer of Ripley admissible as substantive evidence. While the brief of the plaintiff points out that the words "comparable or near comparable" were used by Ripley, we hold that the total answer given by Ripley referred only to that portion of Camden Woods fronting U.S. Highway 17 as being similar to Burnham's frontage along the same highway one half mile apart. There is nothing in Ripley's answer to indicate that he was referring to any other part of the 123.6-acre tract as being comparable or nearly comparable to the 50.819 acres of Burnham's. It is true that as of 3 December 1979, the date of the taking of the Burnham land, Ripley had an opinion

that the highest and best use of the Burnham tract was the same as Camden Woods as of 1973. However, this opinion was reached as of 1979 when substantial progress had been made in developing the residential subdivision in Camden Woods. Also, Ripley had testified on *voir dire* that he did not consider the Camden Woods tract in arriving at his fair market value of Burnham's land. Thus, the answer given over objection of a sales price of $115,000 was erroneously received, and as received it became prejudicial substantive evidence.

Plaintiff strongly contends that the question and answer were competent as a part of legitimate cross-examination. Certainly cross-examination of an expert witness's knowledge of the values and sales prices of similar or comparable properties in the area is permitted when the witness has testified directly on the fair market value of the land in issue, and certainly the same witness can be cross-examined as to his knowledge of sales prices of dissimilar property for the limited purpose of impeachment in order to test his credibility and expertise. Although plaintiff's questions did not suggest a specific sales price, which under *Winebarger* would not have been proper, when the witness Ripley twice responded that he did not know what Camden Woods sold for in 1973, the impeachment purpose of cross-examination had been satisfied and sales price inquiry was exhausted as to that witness on that property. On this record there is nothing to show that the trial judge determined in his discretion that there was any impeachment value in overruling the objections and declining to allow counsel a requested opportunity to be heard before a specific sales price was given. A legitimate basis for the sales price as given by Ripley for Camden Woods is left to pure speculation. The conclusion drawn and opinion expressed by Ripley regarding Camden Woods never reached the point of being fully and totally comparable to the Burnham tract. We hold therefore that it was error for the court to permit cross-examination of Ripley as to the price for which the Camden Woods tract was sold.

[2] Although we find no merit to the other assignments of error, since they could possibly be raised as questions at the new trial, we will proceed to discuss them. In their second question defendants argue that it was error to allow the Department of Transportation's witness Shaw to testify as to the sales price of the Mullen

tract, the Carey tract, and the Keaton-Albertson tract, because they were non-comparable with the Burnham tract, and that if there were any doubt about it, the judge should have conducted a *voir dire.* Defendants contend that if they had been offered a *voir dire,* their cross-examination of Shaw would have shown and emphasized non-comparability, and sales price would have thus been excluded.

Each time in the record when Shaw was being questioned about the three named tracts, the record is silent as to any request for a *voir dire,* and there was no motion to strike any of the answers. Also, the transcript shows fifteen pages of vigorous cross-examination of the same witness. Defendant had his opportunity to elicit evidence to support his contention on non-comparability. There is no requirement that the trial judge conduct a *voir dire* hearing or to make a specific ruling on comparable values of other tracts of land. *Highway Comm. v. Hamilton,* 5 N.C. App. 360, 366, 168 S.E. 2d 419, 423 (1969). As stated in *Barnes v. Highway Commission,* 250 N.C. 378, 394, 109 S.E. 2d 219, 232 (1959):

> "It is within the sound discretion of the trial judge to determine whether there is a sufficient similarity to render the evidence of the sale admissible. It is the better practice for the judge to hear evidence in the absence of the jury as a basis for determining admissibility."

The evidence as actually adduced, while it shows some dissimilarities in size (each of the three tracts were smaller) and in location, is not here sufficient to warrant exclusion. *See Duke Power Company v. Smith,* 54 N.C. App. 214, 282 S.E. 2d 564 (1981). It must also be borne in mind that the plaintiff's appraisers were using the "comparables" as "agricultural" highest and best use comparisons, rather than defendants' showing of "residential subdivision." After careful consideration of the evidence, we hold that the court did not abuse its discretion in determining that the three tracts were sufficiently similar to the condemned land to render sales of these tracts admissible as evidence of the value of the condemned land. *Highway Commission v. Conrad,* 263 N.C. 394, 400, 139 S.E. 2d 553, 558 (1965).

[3] In his final assignment of error, defendant alleges that the trial judge erred in his jury instructions by charging on an

abstract principle of law which in context amounted to an expression of opinion. We disagree.

The challenged portion of the charge is as follows:

"You should reject as they would purely imaginative or speculative uses in value. Fair market value of the land in this suit before the taking is not a speculative value, based on imaginary subdivisions and sales and lots to many purchasers. It is the fair market value of the land as a whole in its then state, according to the purposes for which it was then best adapted and in accordance with its best and highest capabilities. The fair market value is not the aggregate of the prices of lots into which the tract could best be divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and sale of the same and holding it and paying taxes and interest until all lots are disposed of cannot be ignored and it is too uncertain and conjectural to be computed."

Upon the completion of the charge, and in apt time, the record reflects that defendants' counsel stated the following:

"Before the jury retired the defendants excepted to the reference in the jury instructions to the expense of constructing streets as bearing upon the speculative expense of subdividing the land as there has been no evidence that the use of the land for residential lots or residential purposes would require the construction of streets."

Thus, counsel's concern at the time of the jury instructions was about expense of constructing streets and speculative expense of dividing land. Earlier in his charge the judge had correctly defined the applicable measure of damages and had explained to the jury the meaning of fair market value. Next, the judge instructed the jury on the evidence of highest and best use. Then, immediately preceding the portion of the charge assigned as error the judge said:

"You should consider these factors in the same way in which they'd be considered by the willing buyer and the willing seller in arriving at a fair price.

You should reject as they would purely imaginative or speculative uses in value."

We hold that the challenged portion of the charge was supported by the evidence, which in excerpt shows the following: The landowner, Mr. Burnham, testified that his opinion of highest and best use was "[t]o sell it off for lots to build houses." Mr. Ripley testified that he "considered that the highest and best use of the property would certainly be — even with the Highway Department across — would be for singly [*sic*] family, individually sold, properties for single family use." At another point Mr. Ripley had testified that "[t]he highest and best use was for the sale of individual homesites facing 17 and one acre of other tract, depending upon what the purchaser wanted." The jury also had knowledge that one-half mile away, a residential subdivision existed at Camden Woods, and reference had been made to lots in that subdivision.

Mr. Frank Veach, an appraiser for the landowner, testified: "I don't consider Mr. Burnham to be the property owner after the [taking]. I consider a typical buyer, one who'd develop the place because he would have to develop it, he would develop now what is left." Henry Brothers testified, "It could have been cut up or laid off in building lots."

Thus, the judge did not charge on an abstract principle. Streets and cleaning off and improving land are a typical part of a buyer's use of land for residential purposes when such is its highest and best use. The jury should not have speculated on imaginary residential subdivisions and sales of lots, even when all the evidence may show that to be the highest and best use. The charge was supported by the evidence.

Reversed and remanded for a new trial.

Judges HEDRICK and WHICHARD concur.