IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-619

Filed: 20 March 2018

Robeson County, No. 12 SP 161

PIEDMONT NATURAL GAS COMPANY, INC., Petitioner-Appellant,

v.

SAMUEL L. KINLAW, Respondent-Appellee.

Appeal by Petitioner from an order entered on 7 June 2016 by Judge J. Gregory Bell in Robeson County Superior Court. Heard in the Court of Appeals 10 January 2018.

Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LPP, by William H. Moss, for Petitioner-Appellant.

The Odom Firm, PLLC, by David W. Murray, and Williamson, Walton & Scott, LLP, by C. Martin Scott II, for Respondent-Appellee.

ZACHARY, Judge.

Petitioner-Appellant Piedmont Natural Gas Company, Inc. ("PNG") appeals from an order granting the motion for a new trial filed by Respondent-Appellee Samuel L. Kinlaw ("Mr. Kinlaw"). For the reasons that follow, we affirm.

Factual and Procedural Background

On 12 April 2012, PNG commenced a private condemnation action against Mr. Kinlaw, seeking a 2.71 acre permanent easement for an underground natural gas transmission line, together with temporary construction easements totaling 1.31 acres. Both the permanent and temporary easements cross a 60-acre tract of

farmland owned by Mr. Kinlaw.

On 17 May 2013, the Clerk of Superior Court for Robeson County entered a consent judgment providing that PNG would receive the easements it sought and would make a nonrefundable payment to Mr. Kinlaw of $240,000, but that Mr. Kinlaw would retain the right to appeal the amount of compensation for the taking of the easements in a jury trial. Mr. Kinlaw filed a notice of appeal the same day.

The issue of the amount of compensation that PNG owed to Mr. Kinlaw for the taking of the easements was tried beginning on 7 March 2016 before the Honorable J. Gregory Bell. Prior to trial, the trial court granted Mr. Kinlaw's motion *in limine*, "limit[ing] any reference to any sale or sales price for any property without the Court first conducting a *voir dire* of the sale or sales price to determine its relevance, comparability and admissibility."

Mr. Kinlaw's evidence consisted solely of his testimony and exhibits supporting his opinion of the amount of just compensation to which he was entitled for PNG's taking of the easements. On direct examination, Mr. Kinlaw testified that, based upon his experience and research, the highest and best use of the subject property immediately prior to the taking on 12 April 2012 was for residential development. Mr. Kinlaw further testified that, although the highest and best use of most of the property would remain residential development after the taking, the highest and best use for some of his property after the taking would be for agricultural use. His opinion

was that the property had a value of $2,400,000 immediately prior to the taking, but a value of only $1,670,000 after the easements were granted. Accordingly, Mr. Kinlaw sought just compensation of $730,000, the difference in value according to his opinion and calculations.

During cross-examination, Mr. Kinlaw was questioned, over his objection, about the sale of a nearby property referred to by the parties as the "Snake Road property." Although Mr. Kinlaw denied knowing the sales price of the Snake Road property and denied making handwritten notations on a copy of the deed for the Snake Road property, PNG was allowed to cross-examine Mr. Kinlaw over objection about the handwritten notes on a copy of the Snake Road deed indicating a sales price of $3,638 per acre. Mr. Kinlaw was also cross-examined about the similarity of his handwriting and the handwritten notes on the Snake Road deed. Aside from Mr. Kinlaw's property, the Snake Road property was the only other specific property for which evidence of a per-acre value or sales price was introduced.

PNG did not offer any evidence. On 10 March 2016, the jury returned a verdict finding that the sum of $200,000 would be just compensation for the taking of Mr. Kinlaw's property by PNG. On 12 May 2016, the trial court entered judgment for Mr. Kinlaw in that amount. On 18 May 2016, Mr. Kinlaw filed a motion for a new trial, which was heard on 26 May 2016. Thereafter, on 7 June 2016, the trial court entered an order granting Mr. Kinlaw's motion. PNG filed its "Motion for Findings of Fact

and Conclusions of Law, or, in the Alternative, Motion to Reconsider Granting of Respondent's Motion for New Trial," which was denied by the trial court on 11 August 2016. PNG has appealed to this Court from the order granting Mr. Kinlaw a new trial.

## Interlocutory Nature of Appeal

An order "is either interlocutory or the final determination of the rights of the parties." N.C. Gen. Stat. § 1A-1, Rule 54(a) (2016). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 354, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). An order granting a new trial is interlocutory. "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, pursuant to N.C. Gen. Stat. § 1-277(a), "[a]n appeal may be taken from every judicial order . . . [that] grants or refuses a new trial." N.C. Gen. Stat. § 1-277(a) (2016).

## Standard of Review

It is well-established that "an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington*

*v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982) (citation omitted). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (internal citations omitted). A trial court's discretionary order "will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.*

<u>Trial Court's Decision to Grant a New Trial</u>

The order granting Mr. Kinlaw a new trial does not contain findings of fact or conclusions of law. However, the parties agree that the disputed evidentiary issue at trial and at the hearing on Mr. Kinlaw's motion for a new trial was the propriety of allowing PNG to cross-examine Mr. Kinlaw about the sales price per acre of the Snake Road property, as indicated in handwritten notes on a copy of the deed for the property. On appeal, PNG argues that the trial court properly permitted cross-examination on this subject and that the court abused its discretion when it granted a new trial. We disagree.

We first consider whether PNG was properly allowed to cross-examine Mr. Kinlaw at trial about handwritten notes on a copy of the Snake Road property deed indicating the alleged sales price of the property. We conclude that, on the facts of this case, it was error to allow this cross-examination.

The parties do not dispute that at a trial on the issue of just compensation for

a taking, the parties may offer evidence of the price paid at voluntary sales of *comparable* properties as evidence of the value of the property that has been subject to the taking. *North Carolina State Highway Commission v. Helderman*, 285 N.C. 645, 653-54, 207 S.E.2d 720, 726 (1974). The issue in the present case is under what circumstances a party may elicit the sales price of property that has not been determined to be comparable.

The leading case on this issue is *Duke Power Company v. Winebarger*, 300 N.C. 57, 265 S.E.2d 227 (1980). In *Winebarger*, our Supreme Court ordered a new trial for the defendants where improper references were made regarding values and sales prices of noncomparable properties during cross-examination of the defendants' expert witnesses. *Winebarger*, 300 N.C. at 59-61, 265 S.E.2d at 229-30. The Court held that "[a] witness who expresses an opinion on property value may be cross-examined with respect to his *knowledge* of values of nearby properties for the limited purpose of testing the worthiness of his opinion, or challenging his credibility, even if those properties are not similar to that involved in the litigation." *Winebarger*, 300 N.C. at 61, 265 S.E.2d at 231 (emphasis in original) (citation omitted). *Winebarger* drew a sharp distinction between cross-examination on the extent of a witness's knowledge of the sales price of property that had not been determined to be comparable and cross-examination as to the specific prices of property:

> [W]hile a witness' *knowledge*, or lack of it, of the values and
> sales prices of certain noncomparable properties in the

area may be relevant to his credibility, the specific dollar amount of those values and prices will rarely if ever be so relevant. The impeachment purpose of the cross-examination is satisfied when the witness responds to a question probing the scope of his knowledge. Any further inquiry which states or seeks to elicit the specific values of property dissimilar to the parcel subject to the suit is at best mere surplusage. At worst it represents an attempt by the cross-examiner to convey to the jury information which should be excluded from their consideration.

*Winebarger* at 64-65, 265 S.E.2d at 231-32 (emphasis in original). *Winebarger* also

emphasized the limitations of this cross-examination:

Under these limited impeachment circumstances, . . . *it is improper for the cross-examiner to refer to specific values or prices of noncomparable properties in his questions to the witness*. Moreover, if the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted. If, on the other hand, the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues. In such a rare case, however, the cross-examiner must be prepared to take the witness' answer as given.

*Winebarger* at 66, 265 S.E.2d at 232-33 (internal citations omitted) (emphasis added).

In the present case, we conclude that it was error for the trial court to allow

PNG to cross-examine Mr. Kinlaw about the sales price of the Snake Road property.

First, there was no foundation for the use of the sales price of the Snake Road property. The trial court ruled prior to trial that, before allowing examination on the value of specific property, the trial court would conduct a *voir dire* examination to determine whether the property was comparable to Mr. Kinlaw's property. Property is "comparable" if it is "similar in nature, location, and condition to the condemnee's land." *State v. Johnson*, 282 N.C. 1, 21, 191 S.E.2d 641, 655 (1972). In this case, the trial court did not determine whether the Snake Road property was comparable to Mr. Kinlaw's property. Absent a showing that a particular property is comparable to the property at issue, "there [is] no foundation for the use of [a] witness's statement of its sales price as competent circumstantial evidence of the value of land." *Board of Trans. v. Chewning*, 50 N.C. App. 670, 671-72, 274 S.E.2d 902, 904 (1981). Where no such showing or determination was made at trial, this Court has viewed the properties as "noncomparable" in deciding whether the sales price was properly introduced or referenced. *See, e.g., Id.*; *Winebarger*, 300 N.C. 57, 265 S.E.2d 227 (1980); *Dep't of Transp. v. Burnham*, 61 N.C. App. 629, 634, 301 S.E.2d 535, 538 (1983) (Where there was no determination or showing of comparability at trial, "[i]t was an error for the court to permit cross-examination of [the expert witness] as to the price for which [another property] was sold."). Thus, the specific sales price for the Snake Road property was not properly admissible as competent circumstantial evidence of the value of Mr. Kinlaw's land.

In addition, PNG's questions were not proper impeachment of Mr. Kinlaw and his knowledge of land values. While Mr. Kinlaw stated that he was aware of the sale of the Snake Road property, he denied knowing the sales price, stating, "I think [the buyer] traded some, or bought some from the [sellers], or something. I really don't know." Despite this denial, PNG then made a reference to the price of the Snake Road property in the next question to Mr. Kinlaw, asking, "And you know that Mr. John Barker bought this property that's right down Snake Road for around $3,500 an acre. Isn't that correct?". It is clearly improper to refer to specific sales prices of noncomparable properties in questions to a witness on cross-examination. *See Winebarger*, 300 N.C. at 66, 265 S.E.2d at 232-33. Furthermore, as our Supreme Court held in *Winebarger*, "if the witness responds that he *does not know or remember* the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted." *Id.* Here, the impeachment of Mr. Kinlaw as to his knowledge, or lack thereof, of the sales price of the Snake Road property should have ended when he stated that he did not know the sales price, and PNG's questions exceeded the bounds of relevancy.

Moreover, the underlying basis of PNG's cross-examination did not constitute competent evidence of the sales price of the Snake Road property. PNG's cross-examination on this issue was based solely upon handwritten notations of a sales price on a copy of a deed that had been produced during discovery. No evidence was

adduced as to the accuracy of these notes or whether they reflected the actual sales price of the Snake Road property.

The only allowable purpose for which PNG might have cross-examined Mr. Kinlaw about the handwritten notes was to impeach Mr. Kinlaw's testimony that he did not know the sales price of the Snake Road property. However, because Mr. Kinlaw denied that he had made the notes on the deed, PNG could not properly cross-examine Mr. Kinlaw on the collateral issue of the similarity of the notes to other examples of Mr. Kinlaw's handwriting. As our Supreme Court held in *Carver v. Lykes*, 262 N.C. 345, 137 S.E.2d 139 (1964):

> The "utmost freedom of cross-examination" to test a witness' knowledge of values . . . does not mean that counsel may ask the witness if he doesn't know that a certain individual sold his property for a stated sum with no proof of the actual sales price other than the implication in his question. Where such information is material it is easy enough to establish by the witness himself, whether a certain property has been sold to his knowledge and, if so, whether he knows the price. If he says he does not know, his lack of knowledge is thus established by his own testimony and doubt is cast on the value of his opinion. If he asserts his knowledge of the sale and, in response to the cross-examiner's question, states a totally erroneous sales price, is the adverse party bound by the answer or may he call witnesses to establish the true purchase price? *Unless per chance the purchase price of the particular property was competent as substantive evidence of the value of the property involved in the action, it would seem that the party asking the question should be bound by the answer. To hold otherwise would open a Pandora's box of collateral issues.*

*Carver,* 262 N.C. at 356-57, 137 S.E.2d at 148 (1964) (quoting *Barnes v. Highway Commission,* 250 N.C. 378, 395, 109 S.E.2d 219, 233 (1959)) (emphasis added). In urging us to reach a contrary result, PNG argues that this case is distinguishable from *Winebarger* because Mr. Kinlaw "asserted his knowledge" of the sales price of the Snake Road property by producing the deed in discovery. However, Mr. Kinlaw denied making the handwritten notes on the deed or knowing the sales price. As discussed above, even where a witness "asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, [the witness] may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues." *Winebarger,* 300 N.C. at 66, 265 S.E.2d at 232-33 (citing *Carver,* 262 N.C. at 356-57, 137 S.E.2d at 148 (1964)). However, in such a case, "the cross-examiner must be prepared to take the witness' answer as given." *Id.*

For the reasons discussed above, we conclude that Mr. Kinlaw could properly be asked whether he was familiar with the sales price of other properties in the vicinity of his property, including the Snake Road property. However, it was error to allow cross-examination on the purported sales price, given that (1) there was no determination that the Snake Road property was a comparable property; (2) Mr. Kinlaw denied any knowledge of the sales price; (3) no competent evidence was

introduced that the notes accurately stated the sales price; and (4) Mr. Kinlaw denied making the handwritten notes on the Snake Road deed.

The sole basis of PNG's argument that the trial court abused its discretion by awarding Mr. Kinlaw a new trial is that the trial court ruled correctly that the cross-examination was admissible. Given that we have concluded that the trial court erred by allowing this cross-examination, we reject this argument. In addition, N.C. Gen. Stat. § 8C-1, Rule 403 (2016) provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As a result, even if the challenged cross-examination were admissible, it would be within the trial court's authority to determine that the evidence should have been excluded and that its admission warranted a new trial.

Effect of Curative Instruction

PNG argues that even if the trial court erred by allowing cross-examination on the sales price of the Snake Road property, the error was cured by the limiting instruction given to the jury. Generally, there is a "presumption that the jury followed the letter and intent of the judge's instructions." *Winebarger,* 300 N.C. at 67, 265 S.E.2d at 233. However, our Supreme Court has also stated:

> Whether an instruction to disregard or give limited consideration to evidence cures an error potential in its

> admission must always depend upon the nature of the evidence admitted and the circumstances of the case. If the evidence admitted is obviously prejudicial, and especially if it is emphasized by repetition or by allowing it to remain before the jury for an undue length of time, it may be too late to cure the error by withdrawal or cautionary instructions.

*Id.* (citation and quotation marks omitted). In this case, the alleged sales price of the Snake Road property was stated four times in PNG's cross-examination of the sole witness at trial, and was the only sales price heard by the jury. Moreover, that evidence was allowed to remain before the jury without a limiting instruction until immediately prior to closing arguments, which took place the afternoon following Mr. Kinlaw's cross-examination. This was sufficient to allow the trial judge to determine that, in his discretion, a new trial was warranted. The trial court did not abuse its discretion by failing to conclude that its error was cured by the limiting instruction.

<u>Prejudice</u>

Finally, PNG argues that the trial court's order granting a new trial must be reversed on the grounds that Mr. Kinlaw failed to show that, in the absence of the cross-examination on the sales price of the Snake Road property, the result of the trial would have been different. We disagree.

PNG correctly notes that in order to "obtain relief on appeal, an appellant must not only show error, but . . . must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the

outcome of an action." *Bogovich v. Embassy Club of Sedgefield, Inc.*, 211 N.C. App. 1, 14, 712 S.E.2d 257, 266 (2011) (quoting *Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996)) (quotation marks omitted). As the appellant, it is PNG's burden to establish that the trial court's ruling was an abuse of discretion. The trial court granted Mr. Kinlaw's motion for a new trial, and therefore Mr. Kinlaw does not have the burden of proof on appeal. PNG must show that the trial court's ruling was "manifestly unsupported by reason" and "so arbitrary that it could not have been the result of a reasoned decision." *White*, 312 N.C. at 777, 324 S.E.2d at 833. PNG has failed to demonstrate that the trial court, which presided over this trial and was in the best position to determine whether Mr. Kinlaw was prejudiced by the evidentiary ruling, abused its discretion in granting Mr. Kinlaw a new trial.

## Conclusion

For the reasons discussed above, we conclude that the trial court did not abuse its discretion by granting Mr. Kinlaw a new trial and that its order should be affirmed.

AFFIRMED.

Judges CALABRIA and ARROWOOD concur.