RUFUS K. HAYWORTH AND WIFE, DOROTHY HAYWORTH v. BROOKS LUMBER CO. AND FRANCIS A. BROOKS, III

No. 8218SC1350

(Filed 20 December 1983)

1. **Contracts § 29.1— construction contract—failure to correct defects—measure of damages**

    Where defendant agreed in a construction contract to furnish any materials and labor needed to correct any defects or faulty operations resulting from its work at no cost to plaintiff owners, the proper measure of damages for defects in the construction was the cost of repairs needed to make the work conform to the contract.

2. **Contracts § 29.1— breach of construction contract—failure to make repairs—award by trial court—proper measure of damages**

    The trial judge's award for defendant contractor's failure to repair defective work was based upon the proper measure of the cost of repairs rather than on evidence of the difference in the fair market value of the property, and the award was neither speculative nor excessive where it was based on the cost of those repairs itemized by a contractor employed by the owners to correct work and finish defendant's work.

**3. Contracts § 27.2 — breach of construction contract — failure to repair defective work — entitlement to damages**

　　The evidence was sufficient to support the trial court's determination that defendant failed to make repairs to plaintiffs' house in a suitable and workmanlike manner and that plaintiffs suffered damages caused by the defective workmanship.

APPEAL by defendant Brooks Lumber Company from *Washington, Judge.* Judgment entered 13 September 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 17 November 1983.

On 15 April 1977 plaintiffs' house was extensively damaged by fire. Defendant was employed to repair all damage at a cost of $31,267.40, and agreed to restore the house to its condition prior to the fire. Soon after the fire, defendant replaced the roof, ceilings in three rooms, screen wire on the back porch and necessary plumbing and wiring. Defendant also repaired interior walls and painted both the exterior and interior of the house. Upon completion of this work, defendant requested payment. Plaintiffs turned over the $31,267.40 only after defendant signed a document dated 9 September 1977 and entitled "RELEASE AND AGREEMENT." Two of the terms of this agreement were as follows:

> 3. That all materials used and all labor performed, whether by BROOKS LUMBER COMPANY or any subcontractor, is guaranteed to be free of defects and BROOKS LUMBER COMPANY hereby agrees to furnish any materials and labor necessary or needed to correct any defects or faulty operations that result from the work and repairs performed by said BROOKS LUMBER COMPANY, and BROOKS LUMBER COMPANY agrees to do this at no additional cost to Rufus and Dorothy Hayworth or their heirs or assigns.
>
> . . . .
>
> 5. To properly repair defects that are now obvious such as: walls in the utility room, one upstairs light fixture, some kitchen cabinet doors that are stained and warped, back porch screen wire that is sagging, bathroom light fixtures, and to treat certain areas that still have a smoke odor, and to do this at no additional cost to Rufus and Dorothy Hayworth or their heirs or assigns.

Within four to six months after this agreement was signed, paint was peeling off the exterior trim and cracks had appeared in the walls and ceilings. Sometime during 1978 plaintiffs wrote defendant's president and informed him of these problems. Plaintiffs further indicated that the gutters were not catching water; that the roof was leaking and that some of the molding around the ceiling had dropped.

On 17 April 1981 plaintiffs filed a complaint against defendant alleging that defendant had failed to repair the defects listed in the RELEASE AND AGREEMENT and in plaintiffs' 1978 letter. Plaintiffs alleged that they were entitled to both actual and punitive damages in the amount of $25,000 each.

The matter was heard before Judge Washington, sitting without a jury. Defendant appeals from the judgment awarding plaintiffs $5,975 in damages.

*Luke Wright for plaintiff appellees.*

*Osteen, Adams, Tilley & Walker, by J. Patrick Adams, for defendant appellant.*

ARNOLD, Judge.

On appeal defendant assigns error to the measure of damages employed by the trial court and the sufficiency of evidence to support the finding of fact and conclusion of law regarding defendant's failure to make repairs in a suitable and workmanlike manner.

During the trial plaintiff Rufus Hayworth testified, over defendant's objection, that the fair market value of his house before the fire was $110,000 and that the house was worth only $80,000 after defendant made repairs. Plaintiff further presented evidence that in June 1982 he employed a contractor to make repairs that were necessary to remedy defects in defendant's work. The contractor testified that the cost of these repairs was $6,375. This cost was broken down as follows: $1,600 for exterior painting, $1,000 for interior painting, $252 for repairing cracks in walls and ceilings, $250 for repairing the gable above the front porch and $3,000 for replacing the windows. There was testimony that 17 of the 23 windows had been replaced with more expensive double-paned windows.

[1] Defendant argues that the trial judge improperly considered the difference in market value of the house, and that the costs of repairs were too excessive and speculative. We disagree.

> The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract. But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken possession, the latter is not permitted to recover the cost of making the change, but may recover the difference in value. (Citations omitted.)

*Robbins v. Trading Post, Inc.*, 251 N.C. 663, 666, 111 S.E. 2d 884, 887 (1960). If a construction contract provides that the contractor will repair, replace or adjust defects in materials or workmanship at no cost to the buyer then the measure of damages for such defects is limited to the cost of making the work conform to the contract. *Leggette v. Pittman*, 268 N.C. 292, 150 S.E. 2d 420 (1966). Since the defendant in the case on appeal expressly agreed to furnish any materials and labor needed to correct any defects or faulty operations resulting from its work at no cost to plaintiffs, the proper measure of damages was the cost of repairs.

[2] The judgment dictated by the trial judge at the close of trial and included in the transcript filed pursuant to App. R. 9(c)(1), contains language which was later omitted from the judgment signed by the judge. Examination of this omitted language leads us to the conclusion that the judge's award was based upon evidence of the cost of repairs needed to make the work conform to the parties' agreement.

In his dictated findings, the trial judge noted the evidence regarding the difference in the fair market value of the house

before the fire and after defendant made repairs. He indicated that this evidence would be considered "as it bore upon the question of damages." The trial judge later found:

> that the passage of time without prompt remedial work has contributed to some extent to the damages of the Plaintiffs, and the Plaintiffs having made repeated demands upon the Defendant for the performance of such work, are entitled to recover the *reasonable value of such repair work.* (Emphasis supplied.) That such value cannot include the total repair bill incurred by the plaintiffs at this time.

The trial judge concluded:

> that the Plaintiffs have suffered damages by the failure of the Defendant to perform this repair work or to remedy it, and that the reasonable value of such damages at this time, taking into consideration the lapse of time from September 9, 1977, the possibility of other causation, and the lack of positive evidence as to some repair work occasioned and cost, the damages being the sum of $5,975, based upon the contract between the parties and the damages caused to the Plaintiffs.

The award of $5,975 is clearly more in line with the figure given for the cost of repairs necessary to correct defendant's defective repairs ($6,375), than the difference in fair market value of the house before the fire and after defendant made repairs ($30,000).

We also find that the award was neither speculative nor excessive. The trial judge pointed out that there was no evidence regarding some of the alleged defects; and that the windows were replaced with more expensive windows. We believe, however, that the $5,795 award properly reflects the cost of those repairs itemized by the contractor employed by plaintiffs to correct work and finish defendant's work, and takes into consideration the replacement of windows with ones more expensive.

[3] In defendant's next assignment of error, it argues that there was insufficient evidence to support the finding of fact and conclusion of law that defendant failed to make repairs in a suitable and workmanlike manner. We initially note that defendant failed to set out any exceptions to findings of fact or conclusions of law in the body of the record. Pursuant to App. R. 10(a), the scope of

review is therefore limited to whether the judgment is supported by the findings of fact and conclusions of law. *See Swygert v. Swygert*, 46 N.C. App. 173, 264 S.E. 2d 902 (1980).

The trial judge found that in the 9 September 1977 RELEASE AND AGREEMENT, certain defects in defendant's repairs were listed and defendant expressly agreed to correct these defects. The trial judge further found:

> 6. That the president of the corporate defendant suggested to the plaintiffs that there be some delay in making the repairs set out in the agreement, inasmuch as it was anticipated that other repairs would have to be made, and the corporate defendant would like to make all those repairs at one time; that within four to six months after September 9, 1977, other defects appeared, such as the peeling of the paint on the rake boards and windows on the outside, and cracks appeared in the walls and ceilings; that the plaintiffs pointed out those defects, as well as other defects, to the corporate defendant, through its president, by making numerous telephone calls and certified letters, with return receipts being requested, that by an undated letter written during the year 1978 to the corporate defendant, the male plaintiff listed the defects such as the condition of the paint, the guttering, the cracks in the ceiling and the walls, the condition of the laundry room, the condition of the molding and other defective conditions; that the corporate defendant went back to the plaintiffs' property on two occasions to do remedial work, and on one of those occasions the feme plaintiff did not want the work done at that time because of certain health problems the male plaintiff was having;

The judge concluded that defendant failed to correct these defects. The foregoing findings of fact and erroneously labelled conclusion of law support the conclusion that plaintiffs suffered damages caused by defective workmanship.

For the reasons stated above the judgment in plaintiffs' favor is

Affirmed.

Judges HILL and BRASWELL concur.