BUTLER & SIDBURY, INC., PLAINTIFF v. GREEN STREET BAPTIST CHURCH
AND ITS TRUSTEES, DEFENDANT

No. 8726SC1023

(Filed 3 May 1988)

1. **Architects § 3; Contracts § 28— contractor who complies with building specifi-
   cations—responsibility for defects—instructions**

   The trial court was not required to instruct the jury that a contractor
   who complies with the plans and specifications prepared by the owner or the
   owner's architect is not liable for the consequences of defects in the plans or
   specifications, since the jury found that both the roof and the brickwork on de-
   fendant's building were defective, but plaintiff failed to show that the specifi-
   cations were defective or that they proximately caused the defects in the
   finished work.

2. **Evidence § 48— chloride added to mortar—expert testimony based on
   testimony of another witness—admissibility**

   The trial court did not err in permitting an expert to testify that calcium
   chloride was deliberately added to the mortar used in the building constructed
   by plaintiff for defendant where the expert based his testimony on the
   testimony of another witness who was tendered as an expert in material
   analysis; this witness was clearly better qualified than the jury to draw ap-
   propriate inferences from the facts; and the uncontradicted evidence as to the
   high level of chlorides in the mortar was a sufficient factual basis from which
   the experts could infer that the chlorides were deliberately added.

3. **Damages § 17— faulty construction—measure of damages—instructions proper**

   Where a construction contract contains a guarantee against faulty
   materials or workmanship such as appeared in this contract, the measure of
   damages is controlled by the contract, and the proper measure is the cost of
   repairs; however, plaintiff could not complain of the trial court's instructions
   on measure of damages where there was no indication in the record that plain-
   tiff either requested an instruction or objected to the trial court's instructions
   regarding damages even though the trial judge specifically asked counsel for
   objections, corrections, or additions to the charge.

APPEAL by plaintiff from *Sitton (Claude S.), Judge.* Judgment
entered 3 June 1987 in Superior Court, MECKLENBURG County.
Heard in the Court of Appeals 29 March 1988.

Plaintiff, a general contractor, entered into a contract with defendant to construct a church building in High Point, North Carolina. The total contract price for the construction of the building was $3,560,099. The building was completed and occupied by defendant in July 1984. Defendant was not satisfied with various aspects of the construction, however, and withheld the balance due on the contract in the amount of $106,986.56.

Plaintiff filed a complaint on 16 September 1985 seeking to enforce a lien on the church property and to recover the balance due on the contract. Defendant's answer alleged that the work had not been completed and asserted a counterclaim for damages arising out of defects in the construction of the building. The case proceeded to trial, and the jury returned a verdict finding that the roof and the brickwork supplied by plaintiff breached the construction contract and the warranties contained therein. The jury awarded defendant $293,000 in damages for the brickwork, and $50,000 in damages for the roof. The trial court entered judgment cancelling plaintiff's lien and ordering plaintiff to pay defendant damages in the amount of $343,000 plus interest and costs. Plaintiff appeals.

*Miller, Johnston, Taylor and Allison, by John B. Taylor and Greg C. Ahlum; and Henderson & Shuford, by William A. Shuford, for plaintiff-appellant.*

*Haworth, Riggs, Kuhn, Haworth and Miller, by John Haworth and Susan H. Thomas, for defendant-appellee.*

PARKER, Judge.

Plaintiff brings forward four assignments of error: that the trial court erred (i) in failing to instruct the jury regarding the owner's implied warranty of plans and specifications; (ii) in admitting a portion of defendant's expert testimony; (iii) in instructing the jury on the method to determine defendant's damages; and (iv) in failing to apply the balance due on the contract to offset the jury's damage award.

[1] In support of its first assignment of error, plaintiff contends that the trial court was required to instruct the jury that a contractor who complies with the plans and specifications prepared by the owner or the owner's architect is not liable for the conse-

quences of defects in the plans or specifications. *See Bd. of Education v. Construction Corp.*, 50 N.C. App. 238, 241, 273 S.E. 2d 504, 506-07, *disc. rev. allowed*, 302 N.C. 396, 279 S.E. 2d 350, *disc. rev. improvidently granted*, 304 N.C. 187, 282 S.E. 2d 778 (1981). The rationale for the rule is that there is an implied warranty by the owner that the plans and specifications are free of defects and that the contractor's compliance with them will ensure a correct result. *Gilbert Engineering Co. v. City of Asheville*, 74 N.C. App. 350, 362-63, 328 S.E. 2d 849, 857, *disc. rev. denied*, 314 N.C. 329, 333 S.E. 2d 485 (1985).

In the present case, the jury found that both the roof and the brickwork on the church building were defective. Each defect must be considered separately to determine whether the implied warranty of plans and specifications could operate to shield plaintiff from liability. In order to establish a breach of the implied warranty, the contractor has the burden to prove (i) that the plans and specifications were complied with, (ii) that the plans and specifications were defective, and (iii) that the defects in the plans and specifications proximately caused the defects in the completed work. *Gilbert Engineering Co. v. City of Asheville*, 74 N.C. App. at 363, 328 S.E. 2d at 857.

With regard to the brickwork, defendant's evidence showed that the mortar in the brickwork contained unusually high amounts of calcium chloride. Defendant's experts testified that the chlorides in the mortar caused two problems. First, the chloride levels were high enough to corrode the metal ties that anchored the brickwork to an interior wall of concrete blocks. Second, the movement of water through the brickwork brought the chlorides to the surface where they caused discoloration known as efflorescence. The experts also testified that, due to poor workmanship, large amounts of water were able to penetrate the brickwork, which also contributed to the efflorescence.

Plaintiff contends that the presence of chlorides in the mortar could be attributed to defendant's plans and specifications. The specifications called for mortar made up of a prepared mortar mix, sand, and water. Plaintiff argues that, if the chlorides were present in the sand or water, then the specifications were defective. This argument has no merit.

Even if the sand or water were the source of the chlorides, and there is no evidence to show that they were, the presence of the chlorides could not be attributed to the specifications. The specifications did not designate the particular sand and water to be used, nor did they call for calcium chloride in the mortar. Plaintiff did not offer any evidence to show that the specifications were defective or that they proximately caused the defect in the finished work. A trial court cannot instruct the jury on a legal theory that is not supported by the evidence. *Veach v. American Corp.*, 266 N.C. 542, 549-50, 146 S.E. 2d 793, 798-99 (1966). Thus, the trial court did not err in failing to instruct the jury on the implied warranty of plans and specifications with regard to the brickwork.

With regard to the roof, defendant's evidence showed that many of the roofing shingles faded in color. The manufacturer of the shingles, which provided a warranty against non-uniform color fading, attempted to correct the problem by painting or coating the roof, but the result was still not acceptable to defendant. The specifications provided that "color blend shall be uniform over entire roof," and the shingles that were used were approved by defendant's architect.

Plaintiff offered evidence to show that the type of shingle used on the roof, known as a mineral fiber shingle, normally fades in spots. The president of the company that sold the shingles testified that the shingles normally fade in varying degrees over time to achieve a mottled appearance similar to natural slate. Plaintiff contends that the specifications, which called for mineral fiber shingles, are responsible for the unsatisfactory appearance of the roof. Plaintiff argues that the specifications were contradictory and defective because the specified type of shingle could not produce a uniform color blend.

Plaintiff's argument is not supported by the evidence in this case. Both plaintiff's own president and the president of the shingle supplier testified that some fading of the shingles was consistent with the requirement of a "uniform color blend" and that the church roof complied with that requirement before it was painted. This evidence tends to show that the specifications were complied with, but it does not show that the specifications were defective. To the contrary, plaintiff's own evidence tends to show

that the specifications were not contradictory because mineral fiber shingles normally provide a "uniform color blend" as that term is understood in the roofing industry.

The record contains ample evidence to show that the shingles themselves were defective. Plaintiff's contract contained the following guarantee against faulty materials:

> [T]he Contractor shall guarantee his materials and workmanship against defect due to faulty materials or faulty workmanship or negligences for a period of twelve (12) months following final acceptance of the work. . . . The Contractor shall make good such defective materials, equipment, or workmanship within the stipulated guarantee period without cost to the Owner.

The implied warranty of plans and specifications was of no significance where the defect in the completed work was caused by defective materials as opposed to the owner's choice of materials. The assignment of error is overruled.

[2]  Plaintiff next assigns error to the trial court's admission of a portion of defendant's expert testimony concerning the chlorides in the mortar. Specifically, plaintiff contends that the trial court erred in permitting the expert to testify that calcium chloride was deliberately added to the mortar. Plaintiff argues that the expert was not qualified to give such an opinion and that the opinion lacked a proper foundation.

The expert in question is Ian Chin, who was tendered by defendant as an expert in the field of structural engineering and architecture. Mr. Chin is employed by a firm that specializes in investigation and repair of distressed buildings, and his firm investigated the brickwork on the church building. Mr. Chin testified that his firm conducted tests which revealed that there were high levels of calcium chloride in the mortar. He further testified that, although small amounts of chlorides may have been present in the sand or water used to make the mortar, the high levels indicated by the tests could only have resulted from a deliberate addition of calcium chloride. This testimony was admitted over plaintiff's objection.

Defendant argues that plaintiff lost the benefit of its objection because nearly identical testimony from another expert, Ber-

nard Erlin, was subsequently admitted without objection. *See, e.g., State v. Wilson,* 313 N.C. 516, 532, 330 S.E. 2d 450, 461 (1985). Rule 46(a)(1) of the N.C. Rules of Civil Procedure provides that "when there is objection to the admission of evidence involving a specified line of questioning, it shall be deemed that a like objection has been taken to any subsequent admission of evidence involving the same line of questioning." In order to obtain the benefit of Rule 46(a)(1), however, either the objecting party must precisely define the objectionable line of questioning, or the line of questioning objected to must be apparent to the court and the parties. *Power Co. v. Winebarger,* 300 N.C. 57, 68, 265 S.E. 2d 227, 233-34 (1980).

The transcript in this case shows that the trial court initially sustained plaintiff's objection and conducted a *voir dire.* On *voir dire,* the court inquired into Mr. Chin's qualifications to testify as to the usual levels of calcium chloride in sand and water. The transcript of the *voir dire* shows that Mr. Chin's testimony in this regard was substantially based on information obtained from Mr. Erlin, who is with the same firm. Mr. Erlin was tendered as an expert in material analysis, and he also testified that the levels of calcium chloride in the mortar were too high to be attributed to sand or water and could only be explained by a deliberate addition.

An expert witness may base his opinion upon testimony of another witness given in the same trial. *Board of Education v. Construction Corp.,* 64 N.C. App. 158, 160, 306 S.E. 2d 557, 559 (1983), *disc. rev. denied,* 310 N.C. 152, 311 S.E. 2d 290 (1984). In this case, Mr. Chin's testimony was based on the testimony of Mr. Erlin, who had different qualifications. Thus, the objection to Mr. Chin's testimony on the ground that he was not qualified did not invoke the benefit of Rule 46(a)(1) with regard to Mr. Erlin's testimony. In any event, Mr. Erlin's qualifications were adequate because he was clearly better qualified than the jury to draw appropriate inferences from the facts. *See State v. Young,* 312 N.C. 669, 679, 325 S.E. 2d 181, 187 (1985).

Similarly, we find no merit in plaintiff's contention that the opinion lacked a proper foundation. Plaintiff argues that there was no factual basis to support Mr. Chin's opinion that the chlorides were deliberately added to the mortar. Although there was

no direct evidence of a deliberate act, both Mr. Chin and Mr. Erlin testified that there was no other possible explanation for the amount of chlorides they found in the mortar. Both experts also testified that calcium chloride is sometimes added to mortar to make it harden more rapidly and speed up construction, but that chlorides should never be added when there are metal ties in the masonry. Plaintiff made no objection to Mr. Erlin's testimony, and never specifically challenged the factual basis of Mr. Chin's testimony. Aside from the *voir dire* concerning his qualifications, Mr. Chin's testimony was challenged only by a general objection. A general objection will not enable a party to take advantage of Rule 46(a)(1). *Power Co. v. Winebarger, supra.* Even if plaintiff had made the proper objections, we would not find error in the trial court's admission of the testimony because the high level of chlorides in the mortar is a sufficient factual basis from which the experts could infer that the chlorides were deliberately added.

[3] Plaintiff next contends that the trial court erred in its instructions to the jury concerning the method of measuring damages. The jury was instructed to assess damages based on the cost of repairing or correcting the defects in the roof and brickwork. Plaintiff contends that the jury should have been instructed that, if it found that the defects could not be corrected without undoing a substantial part of the completed work, then damages must be based on the diminution in value caused by the defects. *See Robbins v. Trading Post, Inc.*, 251 N.C. 663, 666-67, 111 S.E. 2d 884, 887 (1960).

There is no indication in the record that plaintiff either requested such an instruction or objected to the trial court's instructions regarding damages even though the trial judge specifically asked counsel for objections, corrections, or additions to the charge. Therefore, plaintiff did not properly preserve this issue for appellate review. Rule 10(b)(2), N.C. Rules App. Proc.; *Hanna v. Brady*, 73 N.C. App. 521, 529-30, 327 S.E. 2d 22, 27, *disc. rev. denied*, 313 N.C. 600, 332 S.E. 2d 179 (1985).

In any case, the trial court correctly instructed the jury as to the measure of damages. Where a construction contract contains a guarantee against faulty materials or workmanship such as appeared in this contract, the measure of damages is controlled by the contract and the proper measure is the cost of repairs. *Leg-*

*gette v. Pittman*, 268 N.C. 292, 150 S.E. 2d 420 (1966); *Hayworth v. Brooks Lumber Co.*, 65 N.C. App. 555, 558, 309 S.E. 2d 572, 574 (1983).

Plaintiff's final assignment of error is that the trial court failed to offset the balance due on the contract against the jury's damage award. The record shows that the jury was instructed that defendant could recover only those damages that exceeded the retained amount of the contract price. Defendant presented evidence of damages well in excess of those awarded by the jury. Thus, there is no reason to believe that the jury did not follow the trial court's instruction, and the assignment of error is overruled.

No error.

Judges WELLS and ORR concur.