FRANK SESSOMS AND CARRIE SESSOMS COLE v. ALEC McDONALD AND
   WIFE, AMIE McDONALD; TILDON WALKER AND WIFE, LOTTIE M.
   WALKER; AND J. WARREN PATE AND WIFE, ELIZABETH G. PATE.

(Filed 20 May, 1953.)

**1. Adverse Possession § 2—**

Where the State is not a party to the action, title is conclusively pre-
sumed to be out of the State. G.S. 1-36.

**2. Adverse Possession § 6—**

In order to ripen title by adverse possession, the possession must be con-
tinuous, and isolated acts of possession, no matter how adverse, are insuffi-
cient for this purpose.

**3. Adverse Possession § 9b—**

While the grantee in an unregistered deed may acquire title to the prem-
ises by adverse possession for twenty years, such possession is confined to
the land actually occupied, since in such instance there is no claim under
color of title.

**4. Trial § 22a—**

On motion to nonsuit, the court does not pass upon the credibility of
the witnesses or the weight of the testimony, but determines only whether
the evidence tending to sustain plaintiff's claim is sufficient to raise an
issue for the jury, admitting for the purpose all facts in evidence favorable
to plaintiff and giving plaintiff the benefit of every reasonable inference
therefrom.

**5. Trial § 22c—**

Contradictions in plaintiff's evidence do not justify nonsuit.

**6. Adverse Possession § 19—Evidence of continuous possession by using
   land for purposes for which it was ordinarily susceptible held sufficient.**

Plaintiffs' evidence tended to show that they were grantees in a deed
to a lot contiguous to their homeplace, that they immediately went into
possession upon delivery of their deed and exercised dominion over the
premises by listing and paying taxes, erecting a fence encompassing the
entire lot, having dirt hauled in to fill up the low part, and personally or
through tenants maintaining a garden thereon encompassing the entire
lot for a number of years and that part of the lot susceptible to this use
after the piling of dirt thereon rendered a part of the lot not susceptible
to this use. *Held:* The evidence was sufficient to be submitted to the jury
upon the issue of acquisition of title by twenty years adverse possession.

APPEAL by the defendants Alec McDonald and wife, Amie McDonald,
from *Nimocks, J.,* and a jury, October Term, 1952. CUMBERLAND.

This is a civil action in which the plaintiffs seek to be adjudged the
owners in fee simple and entitled to the immediate possession of a lot of
land in the City of Fayetteville, North Carolina.

The defendants Tildon Walker and wife, and J. Warren Pate and wife filed no answer, and made no appearance. The defendant appellants' brief states "this appeal involves the single question: Did the trial judge commit error in refusing to grant the defendants' motion for nonsuit made at the close of the plaintiffs' evidence, and renewed at the close of all the evidence?"

It is stated in the plaintiff appellees' brief "the plaintiffs rested their claim of title and right of possession upon 20 years or more of adverse possession."

A summary of the plaintiffs' evidence follows. On 21 September, 1929, W. A. Vanstory and wife in consideration of $300 paid to them by the plaintiffs executed and delivered to the plaintiffs, as husband and wife, a deed with full covenants of warranty conveying Lot 51 in plat of a part of the subdivision of the Bevill and Vanstory properties in Fayetteville, North Carolina—the Lot was also described in the deed by metes and bounds. The plat referred to in the deed was recorded in Plat Book S-7, p. 111, in the Register of Deeds' Office of Cumberland County. Frank Sessoms began paying for this Lot in 1928, and when he had finished paying for it, the deed was executed and delivered to him. He carried it home and showed the deed to his wife, who put it in a drawer. Frank Sessoms and his wife separated in 1935, and are now divorced. Her name is now Carrie Sessoms Cole. Frank Sessoms recorded this deed in the Register of Deeds' Office of Cumberland County on 11 December, 1951.

Frank Sessoms has lived on the Wilmington Road 25 or more years. He owns Lot 32 on this road, which has a house on it, and lives in it. He also owns Lot 49 with a house on it, which he leases to James Simpson, who has been his tenant there since December, 1943. Lot 49 is immediately south of Lot 32, and Lot 51—the subject of this litigation—is immediately south of and adjacent to Lot 49. Lot 51 is 40.1 feet on the front and 140 feet deep.

Immediately after receiving the Vanstory deed for Lot 51 on 21 September, 1929, Frank Sessoms plowed the lot, and began using it as a garden. He had used it as a garden the year before, because he was paying Vanstory for it. In 1930 he used all of this lot as a garden. In 1931 he put a fence around his Lots 32, 49 and 51—he fenced the whole of Lot 51. This fence stayed around these lots 8 or 9 years. Some part of the old wire is now there, but no posts. At that time the lots south of Lot 51 were grown up in small trees, but Lot 51 never grew up in small trees. Frank Sessoms and his wife used the whole of Lot 51 as a garden, raising collards, beans, peas, etc., until she separated from him in 1935. She worked it as a garden. Frank Sessoms testified he had a garden on Lot 51 until 1940 or 1941. He set out fruit trees in 1931 on this lot and they stayed there 10 or 12 years. Some died, and when his

wife separated from him, she dug up some, and carried them away. He, his wife and children and children in the neighborhood gathered fruit from these trees. In 1938 or 1939 or 1944 he had cottonseed moult put on the lot to improve the soil. The back part of this lot was low. In 1944 the Wilmington Road was being hard-surfaced, and the road contractor hauled dirt from the road to get rid of it. Frank Sessoms had the contractor to dump some of this dirt in piles on the lot. The dirt remained in piles until leveled by a bulldozer employed by Alec McDonald in 1952.

James Simpson has been a tenant of Frank Sessoms on Lot 49 since December, 1943. With Frank Sessoms' consent he tended this lot as a garden in 1943 and in 1944, and since 1943 parked his car on Lot 51 with Frank Sessoms' permission. James Simpson dug a ditch on Lot 51, and kept it open to keep the water off of the back of the lot he leased from Frank Sessoms after the dirt was piled on Lot 51, and kept the ditch open until Alec McDonald moved on the lot. The back of James Simpson's smokehouse is still inside Lot 51 about 2 feet. Every fall he kept his cow on Lot 51 to keep the weeds down.

Hardy Rhone has lived in the rear of Frank Sessoms' house since 1931. He testified "there was a garden on Lot 51 every year—it was cultivated somewhat every year, just about like city folks do." Hardy Rhone had a garden on Lot 51 with Frank Sessoms' permission in 1945 and in 1946.

Frank Sessoms listed Lot 51 for taxes every year. He had tax receipts on this lot to cover the years 1937 to 1951, both inclusive, except the years 1943, 1945, 1947 and 1950. He had tax receipts prior to 1937, but his wife lost them. On cross-examination Frank Sessoms testified "I can't explain why I had the property for 8 years before it was listed."

Frank Sessoms has not paid any paving assessment on Lot 51. He was never sent a bill, and did not know he owed any until the dispute arose over this lot.

Before Alec McDonald and his wife moved their house on this lot, Frank Sessoms showed them his deed, and told them the lot was his.

The evidence of the defendant appellants may be summarized as follows. Five witnesses, who lived in the neighborhood, testified they had known Lot 51 from 12 to 50 years. None remembered seeing any garden on the lot, and all remembered seeing weeds, bushes, etc. W. C. Holland, a real estate broker, acting for W. A. Vanstory, Jr., finding that the public records did not show that W. A. Vanstory, Sr., had sold Lot 51, sold Lot 51 in February, 1950, to J. Warren Pate and Tildon Walker. F. S. Cullom, an official of the Branch Banking and Trust Company, was handling the Vanstory property as trust property, and in November, 1951, sold and conveyed Lot 51 to E. B. Hope. He did not know that W. C. Holland was handling the lot for W. A. Vanstory, Jr. Cullom,

Pate and Hope did not see any use that was made of this property; it was grown up with weeds. E. B. Hope sold and conveyed Lot 51 to Alec McDonald and wife, and Alec McDonald moved his house on this lot and is now living on it. The deed from E. B. Hope and wife to Alec McDonald and his wife is dated 19 December, 1951, and was recorded 12 February, 1952, in the public registry in Cumberland County. The evidence does not show when the McDonalds moved on Lot 51. However, their answer alleges they took possession after their deed from Hope was recorded.

The evidence does not show whether W. A. Vanstory is dead or not. The case on appeal shows this. "The defendants showed through the witnesses record title to the property from Vanstory, Sr., to Vanstory, Jr., to Walker and Pate, and to the defendants McDonald. Also, another title from the Bank as Trustee under the Will of Vanstory, Sr., to Edward Hope, to the defendants McDonald."

*Thomas H. Williams and Taylor & Mitchell for plaintiffs, appellees.*
*Charles G. Rose, Jr., for defendants, appellants.*

PARKER, J. The sole question presented for decision is whether there was sufficient evidence to carry the case to the jury that the plaintiffs have ripened title to Lot 51 by twenty years adverse possession under known and visible lines and boundaries. G.S. 1-40; *Johnson v. Fry,* 195 N.C. 832, 143 S.E. 857. There is no evidence that anyone was under any disability.

The State not being a party to the action, the title is conclusively presumed to be out of the State. G.S. 1-36.

One issue was submitted to the jury: "Are the plaintiffs the owners and entitled to possession of the property described in the complaint?", to which they responded Yes.

A very clear and concise definition of adverse possession is given in *Perry v. Alford,* 225 N.C. 146, 33 S.E. 2d 665, as follows: "To constitute adverse possession the possession must have been actual, open, continuous, and denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible," citing authorities.

This Court has also said in *Vance v. Guy,* 223 N.C. 409, at p. 413, 27 S.E. 2d 117 "the possession must be continuous, though not necessarily unceasing, for the statutory period, and of such character as to subject the property to the only use of which it is susceptible." (Citing *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347; *Davis v. Land Bank,* 219 N.C. 248, 13 S.E. 2d 417). However, occasional acts of ownership, no matter how

adverse, do not constitute a possession that will mature title. *Price v. Whisnant,* 236 N.C. 381, 72 S.E. 2d 851.

The plaintiffs' unregistered deed does not prevent their setting up adverse possession for twenty years to Lot 51. *Johnson v. Fry, supra; Glass v. Shoe Co.,* 212 N.C. 70, 192 S.E. 899.

The plaintiffs rely upon adverse possession alone without color of title. Title acquired under such circumstances is confined to the lands actually occupied. "An adverse possessor of land without color of title cannot acquire title to any greater amount of land than that which he has actually occupied for the statutory period." *Carswell v. Morganton,* 236 N.C. 375, 72 S.E. 2d 748. Citing many authorities.

In ruling on a motion for nonsuit the court does not pass on the credibility of the witnesses or the weight of the testimony—that is for the jury. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. Contradictions in the plaintiff's evidence do not justify a nonsuit. *Maddox v. Brown,* 232 N.C. 244, 59 S.E. 2d 791. "When the defendant moves for a compulsory nonsuit, he admits, for the purpose of the motion, the truth of all facts in evidence tending to sustain the plaintiff's claim; and the plaintiff is entitled to have the court, in ruling on the motion, to give him the benefit of every favorable inference which the testimony fairly supports." *Graham v. Gas Co.,* 231 N.C. 680, 58 S.E. 2d 757.

The deed from W. A. Vanstory and wife to the plaintiffs is good as between the parties to the deed. *Patterson v. Bryant,* 216 N.C. 550, 5 S.E. 2d 849. The inference seems to be irresistible that whatever use the plaintiffs made of Lot 51, they did it with intent to hold this lot solely for themselves to the exclusion of all others, and that such use was made in the character of owners, in opposition to the right or claim of any other person, and not merely as occasional trespassers.

Frank Sessoms listed Lot 51 for taxes every year. He had tax receipts on this lot to cover the years 1937 to 1951, both inclusive, except the years 1943, 1945, 1947 and 1950. He had tax receipts prior to 1937, but his wife lost them. The listing and payment of taxes on Lot 51 by Frank Sessoms, while not sufficient by themselves to show adverse possession, are relevant facts in connection with the other circumstances as tending to show a claim of title. *Perry v. Alford, supra.*

Upon receipt of their unregistered deed on 21 September, 1929, Frank Sessoms ploughed Lot 51, and he and his wife tended all of it as a garden until 1935, when he and his wife separated; Frank Sessoms used it as a garden until 1940 or 1941; Simpson and Rhone, with Frank Sessoms' permission, used it as a garden in 1943, 1944, 1945 and 1946. Hardy Rhone testified there was a garden on Lot 51 every year—it was cultivated somewhat every year, just about like city folks do. In 1931 Frank Sessoms planted fruit trees on this lot, which stayed there 10 or 12 years.

---

SESSOMS *v.* McDONALD.

---

In 1931 Frank Sessoms put a fence around all of Lot 51 and his other two adjacent lots, which stayed there 8 or 9 years. In 1938 or 1939 or 1944 he had cotton seed moult put on the lot. In 1944 he put piles of dirt on the lot to build up the rear where it was low. These piles remained until Alec McDonald leveled them with a bulldozer in 1952 to move his house on the lot. Frank Sessoms' tenant cut a ditch on Lot 51 after the dirt was piled on this lot to keep the water off of Lot 49 where the tenant lived. This ditch remained open until Alec McDonald moved on the lot. The tenant, Simpson, kept his car on Lot 51; grazed his cow on it each fall; and part of his smokehouse is still on it. Lot 51 never grew up in small trees. There has been no break in continuous possession.

When the dirt in 1944 was piled on Lot 51 to the extent that a bulldozer leveled it, it is obvious all of the lot could not be planted as a garden.

Considering the size of this lot—40.1 feet wide and 140 feet deep—it seems to us that giving to the plaintiffs every favorable inference which the testimony fairly supports that from 21 September, 1929, until the defendant appellants moved on this lot in 1952, the plaintiffs actually occupied all of Lot 51 with intent to hold it solely as possessors to the exclusion of all others; that they exercised acts of dominion over this lot in making the ordinary use and taking the ordinary profits of which this small city lot was susceptible in its condition, and that such acts were so repeated as to show that they were done in the character of owners, in opposition to the right or claim of any other person and not merely as occasional trespassers.

The facts in this case are far different from the cases relied upon by the defendant appellants, which are cases of "occasional acts of ownership" or a break in the continuity of possession.

The court below was correct in overruling the motions for judgment of nonsuit.

The only other assignment of error by the defendant appellants is to the signing of the judgment, which is overruled.

Under a charge that is not brought forward, and is deemed to be correct, the jury, the sole judges of the credibility of the witnesses and the weight of the testimony, have answered the issue in favor of the plaintiffs, by which verdict the defendant appellants must abide.

In the trial we find

No error.