DEPARTMENT OF TRANSPORTATION, PLAINTIFF v. RALPH W. FLEMING,
AND SEVERA FLEMING, DEFENDANTS

No. 9230SC1086

(Filed 16 November 1993)

**Eminent Domain § 122 (NCI4th) — business conducted on property
to be condemned — loss of profits not element of recoverable
damages**

    In a condemnation action, the trial court erred in allowing
defense witnesses to give opinions regarding the value of de-

DEPT. OF TRANSPORTATION v. FLEMING

[112 N.C. App. 580 (1993)]

fendants' land which were based entirely on the net income from the operation of defendants' plumbing business, since loss of profits from the operation of a business conducted on the property is not an element of recoverable damages in an award pursuant to an eminent domain taking.

**Am Jur 2d, Eminent Domain § 287.**

On plaintiff's writ of certiorari from judgment entered 20 August 1992 by Judge Forrest A. Ferrell in Haywood County Superior Court. Heard in the Court of Appeals 1 October 1993.

On 14 January 1991, plaintiff Department of Transportation filed this condemnation action against defendant landowners pursuant to G.S. 136-103 to appropriate for highway purposes a one-fourth acre, triangular shaped tract of land adjacent to U.S. Highway 276 in Haywood County. A concrete building containing approximately 1900 square feet is located on the tract and approximately 4000 square feet of area adjacent to the building is paved. There is also a small utility building behind the main building. Defendants own the property and operate a plumbing and heating business on the property.

Plaintiff estimated that $58,700 was just compensation for the taking of defendants' land and deposited that amount with the court. Defendants demanded a jury trial. The parties stipulated that the only issue before the jury was the amount of compensation to be paid for the taking. The case was tried on 17 August 1992.

At trial defendants presented the testimony of two expert witnesses, Mr. Carroll Mease and Mr. Bobby Joe McClure. Mease was accepted by the trial court as an expert in the area of real estate appraisals. Mease testified that the value of defendants' land immediately before the taking was $231,162. He arrived at that figure by taking the 1990 net income from the operation of defendants' plumbing business and applying a capitalization rate. The small area remaining after the taking was valued at $2000, giving defendants damages of $229,162. Defense witness McClure was accepted as an "expert in real estate values" after the court refused to accept him as an expert appraiser. McClure testified that defendants' property had a value of $245,116 immediately before the taking. He arrived at this figure by capitalizing the 1991 net income from defendants' business. McClure valued the remaining property at $1000, giving defendants damages of $244,116.

Plaintiff presented the testimony of Mr. Marty Reece, who was employed by the Department of Transportation as a real estate appraiser. Reece testified that the value of defendants' land immediately before the taking was $62,425 and he assigned no value to the small remaining piece of land. Reece arrived at this figure by using the cost approach, which values the land as if it were unimproved and then adds the depreciated value of all improvements located on the land. Plaintiff also presented the testimony of Mr. Brent Anderson, who was accepted as an expert witness in the field of real estate appraisal. Anderson was hired by the Department of Transportation to appraise defendants' property. Anderson testified that he valued defendants' property at $56,275. He arrived at this figure by using the same cost approach used by plaintiff's witness Reece.

The jury awarded defendants $127,500 as just compensation for the taking of their property. Since plaintiff had already deposited $58,700 with the court, the court ordered plaintiff to deposit an additional $77,606.40 with the court to cover the balance of the jury verdict. Plaintiff appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Charlie C. Walker, for plaintiff-appellant.*

*Holt, Bonfoey, Brown & Queen, P.A., by Richlyn D. Holt and H.S. Ward, Jr., for defendant-appellees.*

EAGLES, Judge.

Plaintiff's only assignment of error is that the trial court erred in allowing defense witnesses Mease and McClure to give an opinion regarding the value of defendants' land because their opinions were based entirely on the net income from the operation of defendants' plumbing business. We agree and reverse the judgment of the trial court and remand for a new trial.

The general rule, subject to some limited exceptions not applicable here, is that loss of profits from the operation of a business conducted on the property is not an element of recoverable damages in an award pursuant to an eminent domain taking. *Dept. of Trans. v. Byrum*, 82 N.C. App. 96, 98, 345 S.E.2d 416, 418 (1986); *Kirkman v. Highway Comm'n*, 257 N.C. 428, 432, 126 S.E.2d 107, 110 (1962). *See also*, 4 J. Sackman, *Nichols' The Law of Eminent Domain* § 12B.09[1] (rev. 3d ed. 1993). Both defense witnesses stated that

they used the capitalization of income approach to determine the value of defendants' land. Under the income approach, an appraiser calculates the economic rent the property earns and deducts normal operating expenses to arrive at net operating income. That figure is then capitalized by a rate of return to determine the fair market value of the property. 5 J. Sackman, *Nichols' The Law of Eminent Domain* § 19.01[2] (rev. 3d ed. 1993). Although the income approach is an accepted method of appraisal, "[i]n assessing the value of property on the basis of income, care must be taken to distinguish between income from the property and income from the business conducted upon the property." 4 J. Sackman, *Nichols' The Law of Eminent Domain* § 12B.09 (rev. 3d ed. 1993).

In *Dept. of Trans. v. Byrum*, 82 N.C. App. 96, 345 S.E.2d 416 (1986), this Court upheld the exclusion of expert testimony using the income approach to determine fair market value, when it was based on the profits of the business on the property. In *Byrum*, defendants' expert testified on *voir dire* that his opinion concerning the fair market value of defendants' land was based primarily on the income approach to valuing commercial property. He admitted on cross-examination, however, that in using the income approach, he did not use the established rental value of the property. Instead, he used the gross income and the profits from the businesses operating on the property to determine the fair market value. This court upheld the trial court's exclusion of the witness' testimony because the witness' method did not distinguish between the rental income of the property, which is a widely accepted factor in determining fair market value, and income from the business being conducted on the property.

The facts here are similar to *Byrum, supra*. Both witnesses testified that they calculated the value of defendants' property by applying a capitalization rate to the net income from defendants' business as reported on their most recent tax return. It is clear that the witnesses' opinions concerning the fair market value of the property were based on the income from the business and not from any rental value attributable to the land. Accordingly, their testimony was inadmissible.

Defendants contend that our decision in *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 415 S.E.2d 111 (1992), allows the use of the income approach based on the net income of the business when there are no comparable sales or comparable rentals in the

area. In *Cloaninger*, the trial court admitted into evidence schedule F of defendant's tax return relating to defendant's dairy farm business operating on the property. Defendant's expert witnesses testified to the value of the property using the income approach based on the income from defendant's dairy farm business as shown on the tax return. The *Cloaninger* court held that the trial court did not err in allowing defendant's expert witnesses to use the income approach even though it was based on the income of defendant's dairy farm business.

*Cloaninger* does not control the instant case, however, because *Cloaninger* involved a dairy farm business. It is a well recognized exception that the income derived from a farm may be considered in determining the value of the property. This is so because the income from a farm is directly attributable to the land itself. 4 J. Sackman, *Nichols' The Law of Eminent Domain* § 12B.09[1] (rev. 3d ed. 1993); 5 J. Sackman, *Nichols' The Law of Eminent Domain* § 19.06[3] (rev. 3d ed. 1993). The *Cloaninger* court noted that the city's expert witness stated in his report that the income approach was "most appropriate" since dairy farms are income-producing properties. Accordingly, we view the decision in *Cloaninger* as approving the use of the income approach when there are no comparable sales data and the income upon which the opinion of value is based is directly attributable to the land.

Here, the income from defendants' business was in no way attributable to the land. Defendants had no on-site business on the property. When defendants received telephone calls from customers requesting their plumbing services, they dispatched plumbers from the property to go to the customer. There was no evidence that the real estate contributed in any unique way to the income derived from the business. Defendants could have operated their business from their home or from a downtown office building instead of the premises at issue here without affecting the income from the business.

Defendants further argue that their property falls within the uniqueness exception to the use of the income approach. "Where property is so unique as to make unavailable any comparable sales data, evidence of income has been accepted as a measure of value." 5 J. Sackman, *Nichols' The Law of Eminent Domain* § 19.06[6] (rev. 3d ed. 1993). We note that two of the cases falling under the "uniqueness" exception annotated by *Nichols'* involves the ap-

propriation of Goat Island of Niagara Falls, *In re State Reservation*, 16 Abb. N. Cas. 159, *aff'd*, 37 Hun. 537, *appeal dismissed*, 102 N.Y. 734, 7 N.E. 916 (1886), and the condemnation of a harbor and ship repair facility in Connecticut, *Wronowski v. Redevelopment Agency of New London*, 180 Conn. 579, 430 A.2d 1284 (1980). 5 J. Sackman, *Nichols' The Law of Eminent Domain* § 19.06[6], note 51 (rev. 3d ed. 1993). The unique nature of an island in Niagara Falls is obvious, and in the case of the harbor and ship facility, the *Wronowski* court found that the property was unique only after no similar property could be found in Connecticut, Massachusetts, or Rhode Island.

Here, the evidence does not support the contention that defendants' property is unique. Although defendants' witnesses testified that there were no comparable land sales, both of plaintiff's expert witnesses testified that they were able to use the cost approach to value defendants' property. The difference is that defendants' witnesses were using the market data approach in which properties with similar size, shape, and improvements are compared to the subject property. It is undisputed that the market data approach could not be used here because there were no comparable land sales with similar size, shape and improvements to the property at issue here. The cost approach used by plaintiff's witnesses, however, values the land as if it were vacant and then adds the depreciated value of the improvements. Plaintiff's witnesses testified that in using the cost approach, they still had to find comparable sales to value the land and they were able to find similar unimproved land for purposes of the cost approach. Defendants' witnesses did not consider using the cost approach and they did not dispute that it could be used. Since there is sufficient comparable sales data available to use the cost approach, defendants' property here does not fall within the "uniqueness" exception.

Finally, defendants contend that plaintiff has waived its objections to witness Mease's testimony because nearly identical testimony from witness McClure was admitted without objection. Generally, the benefit of a seasonably made objection is lost if the same evidence is subsequently admitted without any objection. *Duke Power Co. v. Winebarger*, 300 N.C. 57, 68, 265 S.E.2d 227, 233-34 (1980). However, Rule 46(a)(1) of the N.C. Rules of Civil Procedure states that "when there is objection to the admission of evidence involving a specified line of questioning, it shall be deemed that like objection has been taken to any subsequent admission of evidence

involving the same line of questioning." G.S. 1A-1, Rule 46(a)(1). Rule 46(a)(1) does not modify the general rule but preserves the effect of a seasonably made objection to a specified line of questioning. *Id.* A general objection will not come within Rule 46(a)(1) unless the line of questioning objected to is apparent to both the court and the parties. *Butler & Sidbury, Inc. v. Green Street Baptist Church*, 90 N.C. App. 65, 70, 367 S.E.2d 380, 383-84 (1988); *Duke Power Co. v. Winebarger*, 300 N.C. 57, 68, 265 S.E.2d 227, 233-34 (1980).

Here, the "line" of questioning plaintiff objected to was apparent to both the court and the parties. Plaintiff objected six times during Mease's testimony to questions concerning the net income of defendants' business. To hold that the trial court was not aware of plaintiff's objection to this line of questioning would truly exalt form over substance. *Duke Power Co. v. Winebarger*, 300 N.C. 57, 68, 265 S.E.2d 227, 233-34 (1980). *Cf. Badgett v. Davis*, 104 N.C. App. 760, 411 S.E.2d 200 (1991); *McKay v. Parham*, 63 N.C. App. 349, 304 S.E.2d 784 (1983). Accordingly, plaintiff's objections to that line of questioning were preserved under the rule. Plaintiff's failure to further object to that line of questioning during witness McClure's testimony was not error.

For the reasons stated, we reverse the judgment of the trial court and remand to the trial court for a new trial.

Reversed.

Judges ORR and GREENE concur.