CITY OF WILSON, PLAINTIFF v. TONY EARL HAWLEY, DEFENDANT

No. COA02-889

(Filed 18 March 2003)

### 1. Appeal and Error— preservation of issues—motion in limine—failure to object at trial

Although defendant property owner contends the trial court erred in a condemnation proceeding by denying his motion in limine regarding his statement to a real estate appraiser concerning

the value of the property, this assignment of error is overruled because defendant waived his right to appellate review by failing to object to this testimony at trial.

**2. Eminent Domain— value and potential use of property**

The trial court did not err in a condemnation proceeding by refusing to allow defendant property owner's testimony concerning the value and potential uses of his property, because: (1) defendant did not make an offer of proof of the testimony he intended to offer; (2) defendant failed to cite authority in support of the admissibility of his purported testimony as required by N.C. R. App. P. 28(b)(5); and (3) there was no evidence by defendant of taking any steps toward potential and future uses prior to the date of the taking.

**3. Eminent Domain— comparative sales and listings**

The trial court did not abuse its discretion in a condemnation proceeding by allowing plaintiff city to offer evidence of comparative sales and listings of other properties in order to show the basis of a real estate appraiser's determination of value of the condemned property where the sales the appraiser considered all occurred within four years of the taking in this case; the listings were dated within one year of the taking; and the sales comparables were in close proximity to the condemned property.

**4. Eminent Domain— valuation—motion to set aside verdict—credibility of witnesses—weight of evidence**

The trial court did not abuse its discretion in a condemnation proceeding by denying defendant property owner's motion to set aside the verdict even though the jury verdict was vastly lower than the values given by three of the four valuation witnesses, because the credibility of witnesses and the weight of the evidence are solely for the jury to determine.

Appeal by defendant from judgment entered 4 February 2002 by Judge Cy A. Grant, Sr. in Wilson County Superior Court. Heard in the Court of Appeals 19 February 2003.

*Rose, Rand, Orcutt, Cauley, Blake & Ellis, P.A., by James P. Cauley, III and Susan K. Ellis, for plaintiff-appellee.*

*Farris & Farris, P.A., by Robert A. Farris, JR., Joseph N. Quinn, Jr. And Thomas J. Farris, for defendant-appellant.*

TYSON, Judge.

Tony Earl Hawley ("defendant") appeals from a jury award of $358,000.00 as just compensation from the City of Wilson ("Wilson") as damages resulting from the condemnation of a portion of defendant's property. We find no error.

## I. Background

On 11 October 1999, Wilson condemned approximately 142.76 acres of defendant's 320.43 acre farm for the Buckhorn Reservoir Expansion Project. Wilson deposited $293,660 with the clerk of court which was disbursed to defendant on 18 October 1999. After the taking, defendant's remaining property consisted of approximately 62 acres of cleared land and 115 acres of woodland.

Prior to trial, defendant filed a motion in limine to suppress prior statements made by defendant concerning the property's value during a meeting with Wilson's appraiser. The trial court ruled that defendant's statements were admissible. Wilson filed and was granted a motion in limine to suppress testimony regarding potential future uses of the property.

Defendant testified that 105 of the acres condemned by Wilson were planted with sweet potatoes at the time of taking. He estimated the value of the unharvested sweet potatoes at $275,000. Defendant testified that sweet potato farming was the highest and best use of the land at the time of taking and that he was using it for that purpose. Defendant attempted to testify to other potential and future uses, but the trial court sustained Wilson's objection.

Defendant opined that the fair market value of the 320 acre tract immediately before condemnation was $6,472,000. He arrived at this value by stating that the cleared land was worth $30,000 per acre and the woodland was worth $2,000 per acre. He estimated fully grown trees to be worth $4,000 per acre. The trees on the condemned property were only "half grown" and defendant estimated their value at $2,000 per acre. To arrive at the price of $30,000 per acre for the cleared land, defendant testified, "[M]y daddy told me when I was growing up, the value of land is what you can make off of it for 20 years." He approximated the annual net profit from the sweet potatoes grown on the cleared land at $1,500 per acre and multiplied that sum by twenty years to arrive at $30,000 per acre.

Defendant believed that only 62 acres of residual cleared land would be usable because flooding from the project would kill trees

located in the woodland acres. He testified that the value of the land after the taking would be $1,860,000, or $30,000 per acre for the 62 acres. Defendant testified that the value of the land taken was $4,618,000. On cross-examination and without objection, defendant admitted that he sold tracts of farm land within a ten-mile radius of the condemned property for $2500 per acre to $3300 per acre in August of 1999.

Donald Scott Johnson, a real estate appraiser, testified for Wilson and stated his opinion of value of the condemned land. Mr. Johnson testified that he (1) used the "sales comparison approach," (2) considered not only property actually sold, (3) but also considered the listing prices for properties in and around the county in 1999 and 2000. Johnson focused on properties comprised of 100 to 300 acres located within Wilson County and in surrounding counties.

Johnson testified that the sales prices ranged from $1,000 per acre to $2,500 per acre and that listing prices ranged from $1,400 to $5,000 per acre. Johnson met defendant on the property and testified, without objection, that defendant told him "Don't come back in here with numbers like 15- or $2,000 an acre. This is 3500- or $4,000-an-acre land." Johnson opined that the value of defendant's property immediately prior to taking was $640,900, roughly $2,000 per acre, and $355,300 after the taking. Johnson estimated the value of the property taken by Wilson to be $285,600.

The jury found $358,000 to be just compensation for defendant's condemned property. The trial court credited the verdict by the deposit amount previously disbursed to defendant and entered judgment in favor of defendant in the amount of $64,340 plus interest.

## II. Issues

Defendant contends the trial court erred in (1) denying his motion in limine regarding defendant's statement to Johnson, (2) refusing to allow defendant's testimony concerning the value and potential uses of his property, (3) allowing plaintiff to offer evidence of sales and listings of other properties remote in time and location to the condemned property, and (4) denying defendant's motion to set aside the verdict as being contrary to the evidence.

## III. Statement to Johnson

[1] Defendant contends that testimony concerning his statements to Johnson is inadmissible under Rule 408 of the North Carolina

Rules of Evidence and that the trial court erred by denying his motion in limine.

Although defendant filed and the trial court ruled on the motion in limine, defendant failed to object at trial to the admission of Johnson's testimony. "The rule is that '[a] motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if the [movant] fails to further object to that evidence at the time it is offered at trial.' " *Martin v. Benson*, 348 N.C. 684, 685, 500 S.E.2d 664, 665 (1998) (quoting *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995)). Defendant failed to object to this testimony at trial and waived his right to appellate review of the trial court's denial of the motion in limine. *Id.* This assignment of error is overruled.

### III. Potential Use of Property

[2] Defendant asserts that the trial court erred in "preventing Defendant from testifying as to the value of the subject property and the potential uses for it." Defendant did not make an offer of proof of the testimony he intended to offer. This Court cannot speculate concerning what defendant's testimony might have been. Further, defendant cited no authority in support of the admissibility of his purported testimony as required by N.C. R. App. P. 28(b)(5) (2002).

Our Supreme Court stated:

In condemnation proceedings the determinative question is: In its condition on the day of the taking, what was the value of the land for the highest and best use to which it would be put by owners possessed of prudence, wisdom, and adequate means? "The owner's actual plans or hopes for the future are completely irrelevant." Such aspirations being "regarded as too remote and speculative to merit consideration."

*State v. Johnson*, 282 N.C. 1, 24, 191 S.E.2d 641, 657 (1972) (quoting 4 Nichols, *The Law of Eminent Domain* § 12.314 (3rd ed. 1971)). Although it is proper for an owner to present evidence of "the condition of the property, its surroundings and all the uses to which the land was adapted, it [is] not competent to prove by the owner the uses to which he had intended to devote it." *Id.* If an owner has taken steps prior to the date of taking to adapt his land for future uses, the future uses to which the land is adapted are admissible. *See Town of Hillsborough v. Crabtree*, 143 N.C. App. 707, 547 S.E.2d 139, *disc. rev. denied*, 354 N.C. 75, 553 S.E.2d 213 (2001).

Here, both defendant and Johnson agreed that the present highest and best use of the property was as a sweet potato farm. There is no evidence by defendant of taking any steps toward potential and future uses prior to the date of the taking. The trial court properly sustained objections to questions regarding defendant's potential use of the land. This assignment of error is overruled.

### IV. Comparative Sales

**[3]** Defendant asserts that the trial court erred in allowing (1) Wilson to cross-examine defendant regarding the purchase prices of the tracts the condemned property comprised when the purchases occurred thirteen to fifteen years prior to the taking and (2) Johnson to use a comparative sales approach for determining the value of the property when the comparative values were remote in time and location.

### A. Defendant's purchase prices

Defendant testified that he retained no independent recollection of many of the sales prices for the property when he originally purchased the property. The trial court issued a subpoena for defendant to search his records for the price he paid for the various properties and return to court to allow continued cross-examination. Defendant failed to object to either the issuance of the subpoena or the subsequent questioning regarding defendant's purchase prices. Defendant has waived appellate review of these questions by failing to object. N.C. R. App. P. 10(b)(1).

### B. Comparative values

Johnson testified that he relied on a comparative sales analysis to arrive at his opinion that the property's value was approximately $2,000 per acre. Johnson used actual sales dating from January 1996 through September 1999 throughout Wilson County. He also used the listing prices for property in that county and adjacent counties to determine a ceiling price in the area. The sales prices ranged from $1,000 to $2,500 per acre and the listing prices ranged from $1,400 to $5,000 per acre. The comparative properties were located inside and outside of the county, on and off of major highways, and all properties contained approximately 100 to 300 acres. Defendant was provided the opportunity to cross-examine Johnson regarding these values and to present rebuttal witnesses to show the value of land in the area.

"Expert witnesses, including real estate appraisers, must be given wide latitude in formulating and explaining their opinions as to value." *Department of Transp. v. Tilley*, 136 N.C. App. 370, 375, 524 S.E.2d 83, 87, *disc. rev. denied*, 351 N.C. 640, 543 S.E.2d 868, *cert. denied*, 531 U.S. 878, 148 L. Ed. 2d 129 (2000). The sales Johnson considered all occurred within four years of the date of taking, and the listings were dated within one year of the condemnation. The transcript does not sufficiently show the distances of the sales comparables from where the condemned property was located, other than the properties were "in close proximity."

> The prejudice here, if any, would not have come from his statement that the asking prices were a part of the general information upon which he based his opinion. The question is whether the fact that these prices were a part of his general knowledge and he did not exclude them from his considerations required the rejection of his opinion. The answer is No. . . . " 'An integral part of an expert's work is to obtain all possible information, data, detail and material which will aid him in arriving at an opinion. Much of the source material will be in and of itself inadmissible evidence but this fact does not preclude him from using it in arriving at an opinion. All of the factors he has gained are weighed and given the sanction of his experience in his expressing an opinion.' " This statement appears to describe the manner in which [the appraiser] arrived at the opinions he expressed. It was not error for the court to permit him to detail the facts upon which he based his opinions.

*Highway Comm. v. Helderman*, 285 N.C. 645, 655-56, 207 S.E.2d 720, 727-28 (1974).

We hold that the trial court did not abuse its discretion in allowing Wilson to introduce evidence of both comparative sales and listing prices of other properties to show the basis of the real estate appraiser's determination of value of the condemned property. This assignment of error is overruled.

### V. Motion to set aside the verdict

[4] Defendant asserts the trial court erred in denying his motion to set aside the verdict on the grounds the jury verdict was vastly lower than the values given by three of the four valuation witnesses and because of the alleged errors at the trial. The jury's verdict was closer to Johnson's valuation, although three of defendant's witnesses

were of the opinion that the value of the property was over four million dollars. The credibility of witnesses and the weight of the evidence are solely for the jury to determine. *Sessoms v. McDonald*, 237 N.C. 720, 75 S.E.2d 904 (1953). As we have found no error in the trial, we hold the trial court did not abuse its discretion in denying defendant's motion to set aside the verdict. This assignment of error is overruled.

### VI. Conclusion

The trial court did not err by admitting defendant's statements to Johnson, in preventing defendant from testifying as to potential use of the property, in allowing plaintiff to offer evidence of sales and listings and in denying defendant's motion to set aside the verdict.

No error.

Judges McCULLOUGH and CALABRIA concur.