THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, PLAINTIFF v. JOHN P. HURLAHE, JR., LINDA D. HURLAHE, ROBERT HULL, WILLIAM H. HOGUE, AND THELMA W. HOGUE, GARY L. BETOW, THRIFTY RENT-A-CAR SYSTEM, INC., TRSTE, INC., WACHOVIA BANK, N.A., CITY/COUNTY TAX COLLECTOR, AFFORDABLE TRANSPORTATION, INC., DEFENDANTS

No. COA05-1074

(Filed 20 June 2006)

**1. Eminent Domain— lost profits—predicted rental income**

Lost profits are not recoverable in a taking under eminent domain, but rental income is admissible on the question of fair market value. The trial court here did not err by admitting testimony from experts concerning their use of predicted rental income in determining the fair market value of property when used for a valet parking business near an airport. A cautionary instruction clarified any jury confusion on the issue.

**2. Eminent Domain— condemnation—future use of land—airport parking**

Future uses of the land are admissible in a condemnation action if the owner has taken steps to adapt the land prior to the taking. Testimony in a condemnation of land near an airport concerning the value of property as a valet parking business was admissible where it was undisputed that the property was largely covered by paved and gravel parking areas, defendant had used the property for parking cars, plaintiff used the property

for airport parking after it was condemned, and an expert appraiser testified that the property was "ready to go" as a valet parking business.

**3. Appeal and Error— preservation of issues—issue not raised at trial**

An issue not raised at trial or assigned as error was not preserved for appellate review.

**4. Eminent Domain— land near airport—evidence of possible use as parking lot**

The was no prejudice in a condemnation action involving land near an airport from the admission of evidence that the owner would have used the land as a valet parking lot. Testimony about the possible uses of property is relevant to its highest and best use, the parties agree that airport parking is the highest and best use here, the city operated a parking lot on the property after the taking, and the City did not argue that the admission was prejudicial.

**5. Appeal and Error— preservation of issues—failure to renew motion for directed verdict**

Plaintiff's failure to renew its motion for a directed verdict at the close of all the evidence meant that it did not preserve for appellate review the denials of its motions for a directed verdict and for a motion for a new trial or a judgment n.o.v.

Appeal by plaintiff from judgment entered 9 November 2004 by Judge Yvonne Mims Evans, in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 March 2006.

*Morris York Williams Surles & Barringer, LLP, by Robyn M. Lacy and John P. Barringer, for plaintiff.*

*The Odom Firm, PLLC, by T. LaFontine Odom, Sr. and Thomas L. Odom, Jr., for defendants.*

*Rebecca Cheney, for City of Charlotte.*

*Nexsen, Pruet, Adams, Kleemeir, PLLC, by Robert H. Hull, Jr., M. Jay DeVaney and Eric H. Biesecker, for Trustee in the Deed of Trust.*

*Harkey and Lambeth, by Averill Harkey, for William Hogue.*

LEVINSON, Judge.

Plaintiff, the city of Charlotte, appeals from judgment awarding defendants John and Linda Hurlahe damages of $2,000,000 plus interest, and from the trial court's denial of plaintiff's post trial motions for a new trial or judgment notwithstanding the verdict. Defendants cross-appeal from an order granting plaintiff's motion to extend the time for plaintiff to serve its proposed record on appeal, and denying defendants' motion to dismiss plaintiff's appeal. We affirm.

In 1986 defendants moved to Charlotte, North Carolina. Defendants bought property near Charlotte/Douglas International Airport in 1986; they bought an adjoining tract in 1993, for a total of approximately 3.6 acres. Defendants' land ("the subject property"), was located less than a mile from the airport terminal passenger drop-off area, and close to highways providing access to the airport. This appeal arises from plaintiff's condemnation of the subject property.

From 1986 to 2002 defendants operated a Thrifty Car Rental franchise on the subject property. Defendants also rented parking spaces to rental car customers and other travelers. The property had over 450 parking spaces, both paved and gravel. During the fall of 2001 defendants' business dropped off, following the events of 11 September 2001 and the resultant decrease in air travel. Defendants could not meet their financial obligations, and on 16 October 2002 Thrifty Car Rental terminated defendants' franchise. Several weeks later, defendants were contacted by the city about condemnation of the subject property.

On 30 December 2002 plaintiff filed a Complaint, Declaration of Taking, and Notice of Deposit, alleging that the city had on that day taken the subject property by eminent domain. Plaintiff sought determination of the amount of compensation owed to defendants, which plaintiff alleged was $842,500. Before trial all other issues were resolved, and a jury trial was conducted in October 2004 on the issue of the amount of compensation defendants were owed for the condemnation of the subject property.

At trial, both plaintiff and defendants presented the testimony of expert witnesses, who offered varying opinions on the fair market value of the subject property. On 15 October 2004 the jury returned a verdict finding that defendants were entitled to damages of $2,000,000 in compensation for the taking of the subject property.

Upon this verdict, the trial court on 9 November 2004 entered judgment in favor of defendants. Plaintiff's post trial motions for a new trial or judgment notwithstanding the verdict were denied, and on 7 December 2004 plaintiff appealed both the judgment and the denial of these motions. On 7 June 2005 defendants filed a motion in the trial court, seeking dismissal of plaintiff's appeal. Defendants cross-appeal from the denial of this motion, and from the court's granting of plaintiff's motion for extension of time to serve its proposed record on appeal.

## Background

Condemnation is defined as a "determination and declaration that certain property (esp. land) is assigned to public use, subject to reasonable compensation; the exercise of eminent domain by a governmental entity." BLACK'S LAW DICTIONARY 310 (8th ed. 2004). "Eminent domain" is the "inherent power of a governmental entity to take privately owned property, . . . subject to reasonable compensation for the taking." BLACK'S LAW DICTIONARY 562 (8th ed. 2004). Plaintiff is authorized to exercise the power of eminent domain, and is directed to follow the condemnation procedures set forth in N.C. Gen. Stat. § 136-103 *et seq.* (2005).

N.C. Gen. Stat. § 136-112 (2005), sets out damages to which a condemnee is entitled, and provides in pertinent part that "[w]here the entire tract is taken the measure of damages for said taking shall be the fair market value of the property at the time of taking." N.C. Gen. Stat. § 136-112(2) (2005). The fair market value of a property may be defined as "the price which a willing buyer would pay to purchase the asset on the open market from a willing seller, with neither party being under any compulsion to complete the transaction." *Carlson v. Carlson*, 127 N.C. App. 87, 91, 487 S.E.2d 784, 786 (1997) (citation omitted).

## Plaintiff's Appeal

[1] Plaintiff argues that the trial court erred by "admitting evidence concerning the net income of a hypothetical valet parking business on the subject property." We disagree.

Plaintiff challenges the court's admission of certain testimony. "Admission of evidence is 'addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown.' Under an abuse of discretion stand-

ard, we defer to the trial court's discretion and will reverse its decision 'only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.' " *Gibbs v. Mayo*, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (quoting *Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997); and *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)), *disc. review denied*, 358 N.C. 543, 599 S.E.2d 45 (2004). Accordingly, we must determine whether the trial court abused its discretion in admitting evidence of the predicted net income from operation of a valet parking lot on the subject property.

"In a condemnation case the issue for determination is damages based upon the difference in fair market value of the property before and after the taking. Accepted methods of appraisal in determining fair market value include: (1) the comparable sales method, (2) the cost approach, and (3) the capitalization of income approach." *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 16, 415 S.E.2d 111, 115 (1992) (emphasis added) (citing *Metro. Sewerage Dist. of Buncombe Co. v. Trueblood*, 64 N.C. App. 690, 308 S.E.2d 340 (1983); and 4 J. Sackman, NICHOLS' THE LAW ON EMINENT DOMAIN §§ 12B.04, 12B.08, 12B.11 (rev. 3d ed. 1990)). "[T]he income approach is generally considered the most reliable method for determining the market value of investment property[.]" *In re Appeal of the Greens of Pine Glen Ltd. P'Ship*, 356 N.C. 642, 648, 576 S.E.2d 316, 320 (2003) (determination of fair market value for tax assessment). "Under the income approach, an appraiser calculates the economic rent the property earns and deducts normal operating expenses to arrive at net operating income. That figure is then capitalized [divided] by a rate of return [percent] to determine the fair market value of the property." *Dept. of Transportation v. Fleming*, 112 N.C. App. 580, 583, 436 S.E.2d 407, 409 (1993) (citing 5 J. Sackman, NICHOLS' THE LAW OF EMINENT DOMAIN § 19.01[2] (rev. 3d ed. 1993)).

In the instant case, the challenged testimony was offered by two of defendants' expert witnesses, both of whom used the income method to determine the fair market value of the subject property. The first, Bruce Tomlin, was recognized by the court as an expert in commercial real estate appraisal. Tomlin testified that the income approach was commonly used in the appraisal of commercial or non-residential property. He told the jury that "the income approach is where you consider what could you achieve in net income from the operation of the real estate[,]" and said that:

[You] . . . collect rental comparables, to see what income you could generate. You will look at occupancy rates. . . . [T]hen you'll come down to an effective . . . gross income. . . .

After you have your effective gross income, you take off your expenses[,] . . . [to reach the] N.O.I. or net operating income. . . . And then, investors value that out in the market place. . . . Take the [net operating income] and divide it by [the appropriate] percent capitalization rate.

Tomlin explained that the capitalization rate was a measure of the perceived risk of investing in a property, and that the greater the risk, the higher the capitalization rate. Tomlin also testified about the procedure he used to obtain the information necessary for application of the income approach to the subject property.

Similar testimony was offered by defense witness Roscoe Shiplett, also recognized by the court as an expert in real estate appraisal. Shiplett testified that, because of the absence of comparable sales of airport parking lots at Douglas Airport, the income approach was the most appropriate method to determine the fair market value of the subject property. He explained the calculations required to convert the parking lot rental net income to fair market value. Both Tomlin and Shiplett testified regarding the reasons that the income approach was used, and the process by which they derived the necessary numerical values. We conclude that the testimony of both Tomlin and Shiplett was admissible on the issue of the subject property's fair market value as ascertained by the income approach, and that the trial court did not abuse its discretion by admitting this evidence. Plaintiff, however, argues that evidence of the net income from operation of a parking lot on the subject property constituted inadmissible evidence of "lost profits." We disagree.

Plaintiff correctly states that "[l]oss of profits are not elements of recoverable damages in an award for a taking under the power of eminent domain." *Dept. of Trans. v. Byrum*, 82 N.C. App. 96, 99, 345 S.E.2d 416, 418 (1986) (citation omitted). Thus, for example, if identical adjoining stores were taken in the condemnation of a shopping center, the owners of these two stores should be entitled to the same amount in damages, even if one owner ran a profitable fine jewelry business, while the other operated a failing shoe repair shop.

In *Dept. of Transportation v. Fleming*, 112 N.C. App. 580, 582, 436 S.E.2d 407, 409 (1993), the landowner's witnesses calculated the

value of the condemned property "based entirely on the net income from the operation of defendants' plumbing business." This Court stated that "[a]lthough the income approach is an accepted method of appraisal, '[i]n assessing the value of property on the basis of income, care must be taken to distinguish between income from the property and income from the business conducted upon the property.' " *Id.* at 583, 436 S.E.2d at 409 (quoting 4 J. Sackman, NICHOLS' THE LAW OF EMINENT DOMAIN § 12B.09 (rev. 3d ed. 1993)). Comparing rental income derived directly from property to profits from a plumbing business, the Court found "no evidence that the real estate contributed in any unique way to the income derived from the business." *Id.* at 584, 436 S.E.2d at 410.

However, "rental income . . . has long been an accepted consideration in arriving at fair market value of the property at the time of the taking." *Byrum*, 82 N.C. App. at 100, 345 S.E.2d at 419 (distinguishing the income from rental of campground spaces from the profits of a restaurant and game room located in the campground). Thus, "[w]hen rental property is condemned the owner may not recover for lost rents, but rental value of property is competent upon the question of the fair market value of the property at the time of the taking." *Kirkman v. Highway Commission*, 257 N.C. 428, 432, 126 S.E.2d 107, 110 (1962) (citation omitted).

This Court has previously upheld the admission of evidence of the rental income from an airport parking lot in determination of the fair market value of property condemned for airport use. In *Raleigh-Durham Airport Authority v. King*, 75 N.C. App. 121, 330 S.E.2d 618 (1985), plaintiff argued that the trial court erred in its "admission of the testimony of defendant Mary King as to the revenues and expenses of the parking business operated on the 3.6 acres at issue in this case" and contended it "was evidence of the profits of defendants' business and that although evidence of rents paid for use of the land is admissible, evidence of the profits of a business conducted on land is not admissible to prove the fair market value of the land." *King*, 75 N.C. App. at 123, 330 S.E.2d at 619-20. This Court held:

> [Defendant] was essentially renting or leasing parking spaces to airline passengers. Evidence of the rental revenues from land may be admitted and considered in determining the fair market value of the land at the time of taking.

*Id.* And, in *Raleigh-Durham Airport Authority v. King*, 75 N.C. App. 57, 63, 330 S.E.2d 622, 625-26 (1985), this Court stated that:

[T]he airport was the 'principal market maker' in the area, affecting property values and commercial viability of land in the vicinity of the airport. Airport rentals of space inside the terminal, . . . established the maximum rent that could be charged[, and]. . . availability of that space directly affected the amount of rent that could be charged outside the terminal. Thus, [the witness's] use of airport rentals allowed him to appraise the defendants' property within the context of the commercial and economic realities of the area.

In the present case, neither Tomlin nor Shiplett testified that defendants were entitled to damages in the amount of "lost profits"; instead, each performed the calculations necessary to convert rental income to fair market value. We conclude that their testimony did not constitute improper evidence of "lost profits."

[2] Plaintiff also argues that the challenged testimony was inadmissible, on the grounds that it pertained to a "hypothetical" business. In support of this position, plaintiff cites several cases holding that damages in a condemnation case should not be calculated by reference to a proposed use of the land for which the land was not adapted at the time of the taking. For example, in *State v. Johnson*, 282 N.C. 1, 191 S.E.2d 641 (1972), the North Carolina Supreme Court noted that:

In condemnation proceedings, the well established rule is that in determining fair market value the essential inquiry is, 'what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for all valuable uses?'

*Id.* at 14, 191 S.E.2d at 651 (quoting *Barnes v. Highway Commission*, 250 N.C. 378, 387, 109 S.E.2d 219, 227 (1959)). In *Johnson* this Court held that, on the facts presented therein, "it is not proper for the jury . . . to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact." *Id.* at 15, 191 S.E.2d at 651. And, in *City of Wilson v. Hawley*, 156 N.C. App. 609, 577 S.E.2d 161 (2003), this Court upheld the exclusion of evidence regarding the potential for operating a sweet potato farm on property where the defendant had not converted wooded acreage to farm fields.

However, "[i]f an owner has taken steps prior to the date of taking to adapt his land for future uses, the future uses to which the land is adapted are admissible." *Hawley*, 156 N.C. App. at 613, 577 S.E.2d

at 164. In the instant case, it is undisputed that the subject property was largely covered by paved and gravel parking areas, that defendant had used the property for parking cars, and that plaintiff used it for airport parking after it was condemned. Tomlin even testified that the subject property was "ready to go" for use as a valet parking business. We conclude that this use of the property was properly considered by the jury.

[3] On appeal plaintiff also raises for the first time the additional issue of whether rental income from a valet parking business should be excluded on the grounds that the *nature* of such a business is that of a service, rather than rental. Plaintiff failed to raise this issue at trial, or to assign error on this basis, and thus has not preserved this question for appellate review. N.C.R. App. P. 10(a) and (b)(1).

Finally, we note that plaintiff asked for and received a cautionary instruction to the jury stating in pertinent part that:

> Loss of profits of a business conducted on the property taken is not an element of recoverable damages. Accordingly, value based on the net income of a business is not the true measure of damages and is not permissible. Notwithstanding, when the income is directly attributable to the land itself, such income may be considered in determining the value of the property.

Accordingly, any jury confusion arising from admission of the challenged testimony was properly clarified and explained by the trial court. We conclude that the trial court did not abuse its discretion by admitting evidence of the net income that might be obtained from operation of a valet parking business on the property. This assignment of error is overruled.

[4] Plaintiff argues next that the trial court erred by admitting evidence of the Hurlahe's intended future use of the subject property. We disagree.

Testimony about possible uses of the property is relevant to determination of its highest and best use. "Indeed, the highest and best use, the highest and most valuable use, the highest and most profitable use, or the most advantageous use are generally accepted factors in determining the market value of land taken in condemnation proceedings." *Williams v. Highway Commission*, 252 N.C. 514, 517, 114 S.E.2d 340, 342 (1960) (citation omitted).

Defendant John Hurlahe testified that, had the property not been condemned, he would have operated it as an airport parking lot. In fact, the parties agree that airport parking is the highest and best use of the property. It is undisputed that the city operated a parking lot on the subject property after taking it from defendant. In this context, we perceive no harm to plaintiff from defendant's testimony that, like the plaintiff, he too would have used the land for a parking lot.

"The burden is on the appellant not only to show error, but to show prejudicial error, i.e., that a different result would have likely ensued had the error not occurred." *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 271, 302 S.E.2d 204, 214 (1983) (citation omitted). In the instant case, plaintiff does not argue on appeal that admission of this testimony prejudiced their case, and we discern no prejudice. This assignment of error is overruled.

---

**[5]** Plaintiff also argues that the trial court committed reversible error by denying its motion for directed verdict. However, although plaintiff moved for directed verdict at the end of the defendants' evidence, it failed to renew this motion at the close of all the evidence. This Court has previously held:

> By offering their own evidence, defendants waived their motion for a directed verdict made at the close of plaintiffs' evidence and, in order to preserve the question of the sufficiency of the evidence for appellate review, they were required to renew this motion at the close of all the evidence. Defendants did not, however, renew their motion for directed verdict at the close of the evidence. Because of this failure, defendants are not entitled to argue this issue on appeal.

*Cannon v. Day*, 165 N.C. App. 302, 305-06, 598 S.E.2d 207, 210, (citing *Gibbs v. Duke*, 32 N.C. App. 439, 442, 232 S.E.2d 484, 486 (1977)), *disc. review denied*, 359 N.C. 67, 604 S.E.2d 309 (2004). This assignment of error is overruled.

In a related assignment of error, plaintiff argues that the trial court abused its discretion by denying their motion for a new trial or, in the alternative, for judgment notwithstanding the verdict. Under N.C. Gen. Stat. § 1A-1, Rule 50 (2005):

> (b) (1) Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, ... a party who has moved for a directed verdict may

move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict[.] . . . [T]he motion shall be granted if it appears that the motion for directed verdict could properly have been granted. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

(emphasis added). "Plaintiff failed to move for a directed verdict at the close of all the evidence. Therefore, plaintiff failed to preserve [the] right to move for judgment notwithstanding the verdict." *Tatum v. Tatum*, 318 N.C. 407, 408, 348 S.E.2d 813, 813 (1986) (citation omitted). This assignment of error is overruled.

We have considered plaintiff's remaining assignments of error and conclude they are without merit.

## Defendants' Cross-Appeal

Defendants cross-appeal from the denial of their motion to dismiss plaintiff's appeal, and from the trial court's order granting plaintiff additional time to prepare the Record on Appeal. We have considered their arguments in this regard and find them to be without merit. This assignment of error is overruled.

For the reasons discussed above, the judgment in this case is

Affirmed.

Chief Judge MARTIN and Judge ELMORE concur.